UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

COMMUNITY HEALTH SOLUTIONS
OF AMERICA, LLC,

CASE NO. 8:06-bk-01215-CPM
CHAPTER 11

Debtor.

_____/

**IMPERIAL PREMIUM FINANCE, INC.'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY,
OR ALTERNATIVELY, FOR ADEQUATE PROTECTION**

Creditor, Imperial Premium Finance, Inc. ("Imperial"), by and through the undersigned counsel, hereby files this motion for relief from the automatic stay, or alternatively, for adequate protection (the "Motion"), and states the following:

1. Imperial seeks relief from the automatic stay of 11 U.S.C. § 362 as to unearned insurance premiums financed by Imperial for the benefit of Debtor.

2. This Motion is a "core proceeding" as that term is used in 28 U.S.C. § 157(b)(2).

3. Jurisdiction and venue of this core proceeding are properly in this Court pursuant to 28 U.S.C. § 1334 and § 157; the July 11, 1984 Order of W. Terrell Hodges, Chief Judge, United States District Court for the Middle

District of Florida; and 28 U.S.C. § 1409.

4. On March 24, 2006 (the "Petition Date"), Community Health Solutions of America, LLC (the "Debtor"), filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"). The Debtor is operating as a debtor-in-possession under Sections 1107 and 1108 of the Code.

5. On or about January 17, 2006, the Debtor executed and delivered a "Premium Finance Agreement, Disclosure Statement and Security Agreement (the "Finance Agreement") to Imperial. A copy of the Finance Agreement is attached hereto as **Exhibit "A"**.

6. Imperial perfected its interest in the insurance policy that is the subject of the Finance Agreement in accordance with Section 627.844, *Florida Statutes*.

7. Pursuant to the terms of the Finance Agreement, the Debtor agreed to pay Imperial nine (9) consecutive monthly payments in the amount of $7,979.45 beginning on January 20, 2006.

8. On April 20, 2006, Debtor defaulted under the terms of the Finance Agreement by failing to make the installment payment due in the amount of $7,979.45, plus late charges in the amount of $398.97.

9. The Debtor subsequently paid the April installment late on May 8, 2006; however, the assessed late fee of $398.97 was not included in the wire transfer.

10. According to the Affidavit of Indebtedness attached hereto as **Exhibit "B"**, the Debtor owes Imperial the total amount of $40,695.19, plus attorneys' fees.

11. Imperial is an over-secured creditor. On the Petition Date, the value of the unearned premium collateral for the Financing Agreement was $63,476.53. On the Petition Date, Debtor owed Imperial $55,856.15. Accordingly, Imperial is entitled to recover costs, and attorneys' fees incurred in connection with the filing of this motion pursuant to the terms of the Finance Agreement.

12. Imperial's collateral position continues to erode. The unearned premiums decline in value at a rate of $234.38 per day.

WHEREFORE, Imperial requests that the Court enter an Order:

a. terminating the automatic stay for cause to permit Imperial to exercise its rights under applicable non-bankruptcy law, including termination of the Finance Agreement and return of the unearned insurance premiums to Imperial, or alternatively entering an appropriate adequate protection order;

b. granting Imperial attorneys' fees and costs associated with the filing of this Motion; and

c. granting such other and further relief as the Court deems just and proper.

/s/ Noel R. Boeke
Noel R. Boeke
Florida Bar No. 0151830
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
P. O. Box 1288 (33601)
Tampa, Florida 33602
Tel: (813) 227-6525
Fax: (813) 229-0134
Attorneys for Imperial

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been provided by electronic transmission or by U.S. Mail (copies to Non-ECF parties were sent without exhibits; however, exhibits are available upon written or telephonic request to the undersigned counsel) this 12th day of May, 2006 to:

Community Health Solutions
Of America, LLC
17755 U.S. Highway 19 N.
Suite 400
Clearwater, FL 33764

Allan C. Watkins, Esq.
Watkins Law Firm, PA
707 N. Franklin St., Suite 750
Tampa, FL 33602

Denise E. Barnett
United States Trustee
501 E. Polk St., Suite 1200
Tampa, FL 33602

Twenty Largest Unsecured Creditors
(List Attached)

/s/ Noel R. Boeke
Attorney

# 3768498_v3

Form 4
(10/05)

# United States Bankruptcy Court
## Middle District of Florida

In re  Community Health Solutions of America, LLC  
              Debtor(s)

Case No. _____  
Chapter  11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Aetna<br>P.O. Box 44129<br>Jacksonville, FL 32231-4129 | Aetna<br>P.O. Box 44129<br>Jacksonville, FL 32231-4129 | | | 37,151.00 |
| AmSouth Bank<br>Platinum Plus for Business<br>P.O. Box 15469<br>Wilmington, DE 19886-5469 | AmSouth Bank<br>Platinum Plus for Business<br>P.O. Box 15469<br>Wilmington, DE 19886-5469 | | | 34,421.56 |
| Atlantic Relocation Systems<br>5415 Pioneer Park Blvd.<br>Tampa, FL 33634 | Atlantic Relocation Systems<br>5415 Pioneer Park Blvd.<br>Tampa, FL 33634 | | | 21,204.00 |
| Brown McCarroll, LLP<br>111 Congress Avenue<br>Suite 1400<br>Austin, TX 78701-4043 | Brown McCarroll, LLP<br>111 Congress Avenue<br>Suite 1400<br>Austin, TX 78701-4043 | | | 260,448.31 |
| Corporate Express<br>9319 Peach Palm Avenue<br>Tampa, FL 33619 | Corporate Express<br>9319 Peach Palm Avenue<br>Tampa, FL 33619 | | | 9,999.48 |
| Danka Financial Services<br>P.O. Box 7247-0322<br>Philadelphia, PA 19170-0322 | Danka Financial Services<br>P.O. Box 7247-0322<br>Philadelphia, PA 19170-0322 | | | 8,775.77 |
| Dwight Darby & Company<br>611 South Magnolia Avenue<br>Tampa, FL 33606-2744 | Dwight Darby & Company<br>611 South Magnolia Avenue<br>Tampa, FL 33606-2744 | | | 8,500.00 |
| Gary Simmons | Gary Simmons | | | 120,100.32 |
| George & Fisher<br>354 Manning Street<br>Jefferson, MA 01533 | George & Fisher<br>354 Manning Street<br>Jefferson, MA 01533 | | | 18,000.00 |
| Imperial Premium Finance<br>1001 Winstead Drive<br>Suite 500<br>Cary, NC 27513 | Imperial Premium Finance<br>1001 Winstead Drive<br>Suite 500<br>Cary, NC 27513 | | | 16,357.87 |
| Joyce Dove | Joyce Dove | | | 20,278.75 |
| Lori A. Oliver-Bomar | Lori A. Oliver-Bomar | | | 8,636.88 |

In re  Community Health Solutions of America, LLC                                    Case No. _____
                                    Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| McKesson Health Solutions<br>22423 Network Place<br>Chicago, IL 60673-1224 | McKesson Health Solutions<br>22423 Network Place<br>Chicago, IL 60673-1224 | | | 52,528.04 |
| MedImpact<br>10680 Treena Street<br>5th Floor<br>San Diego, CA 92131 | MedImpact<br>10680 Treena Street<br>5th Floor<br>San Diego, CA 92131 | | | 704,475.08 |
| Pitney Bowes<br>P.O. Box 856042<br>Louisville, KY 40285-6043 | Pitney Bowes<br>P.O. Box 856042<br>Louisville, KY 40285-6043 | | | 19,578.71 |
| Platinum Plus for Business<br>P.O. Box 15469<br>Wilmington, DE 19886-5469 | Platinum Plus for Business<br>P.O. Box 15469<br>Wilmington, DE 19886-5469 | | | 34,828.68 |
| Sir Speedy<br>956 1st Avenue North<br>Saint Petersburg, FL 33705 | Sir Speedy<br>956 1st Avenue North<br>Saint Petersburg, FL 33705 | | | 16,633.66 |
| State of Florida<br>Dept. of Revenue<br>505 W. Tennessee Street<br>Tallahassee, FL 32399-0100 | State of Florida<br>Dept. of Revenue<br>505 W. Tennessee Street<br>Tallahassee, FL 32399-0100 | | | 10,349.00 |
| Suddath Relocation Systems<br>of St. Petersburg<br>4756 122nd Avenue North<br>Clearwater, FL 33762 | Suddath Relocation Systems<br>of St. Petersburg<br>4756 122nd Avenue North<br>Clearwater, FL 33762 | | | 9,889.92 |
| Tricast, Inc.<br>17755 US. Hwy. 19 North<br>Clearwater, FL 33764 | Tricast, Inc.<br>17755 US. Hwy. 19 North<br>Clearwater, FL 33764 | | | 90,482.69 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date  March 22, 2006                                    Signature  /s/ Brian Fischer
                                                                   Brian Fischer
                                                                   President

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

**PREMIUM FINANCE AGREEMENT**
**DISCLOSURE STATEMENT**
**AND SECURITY AGREEMENT**

A.I. Credit Corp. NC License # B-68, VA License # PF008
AICCO, Inc. NC License # B-434, VA License #PF311

**Imperial Premium Finance, Inc.**
101 Hudson Street, Jersey City, NJ 07302 (201) 631-5400 or (877) 902-4242
80 Pine Street, 6th Fl., New York, NY 10005 (212) 770-2900 or (877) 902-4242
200 Old Country Road, Mineola, NY 11501 (516) 662-0128 or (877) 902-4242
1700 Market Street, Suite 2000, Philadelphia, PA 19103 (215) 225-6393 or (877) 902-4242
1200 Abernathy Road, NE, Suite 500, Bldg. 600, Atlanta, GA 30328 (770) 671-2219 or (877) 902-4242
99 High Street, 30th Fl., Boston, MA 02110 (617) 457-2841 or (877) 902-4242
300 South Riverside Plaza, Suite 2100, Chicago IL 60606 (312) 559-1410 or (877) 902-4242

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| A | TOTAL PREMIUMS | $ | 85,547.88 | BORROWER / INSURED (The "Insured") (Name, Address and Telephone Number) Community Health Solutions of America, LLC 100 1st Avenue South Ste 600 | | Acct. No. 06-208-88 06347 | | |
| B | CASH DOWN PAYMENT REQUIRED | $ | 17,109.58 | | | | | |
| C | AMOUNT FINANCED (The Amount of Credit Provided to Insured or on its behalf) | $ | 68,438.30 | St. Petersburg  E-Mail Address (optional): | | FL | 33701 | |
| D | FINANCE CHARGE (Dollar amount credit will cost) | $ | 3,136.99 | ANNUAL PERCENTAGE RATE _____ 10.870 % (Cost of Credit figured as a yearly rate) | | | | |
| | | | | | **PAYMENT SCHEDULE** | | | |
| E | FLORIDA DOCUMENTARY STAMP TAX | $ | 239.76 | Amount of Each Payment | Number of Payments (Annual / Qtrly / Mnthly) | | 1st Payment Due | Final Payment Due |
| F | TOTAL PAYMENTS (Amount which will have been paid after making all scheduled payments) | $ | 71,815.05 | 7,979.45 | | 9 | 01/20/2006 | 09/20/2006 |

Quote Number:000000537614   TPA: SYS:W PIN:122305 CFG:STD ShortRate RT:Standard CRD:0 BP:INV P/P:0.00 PFM:R SUB:3675

## SEE PAGE 3 FOR SCHEDULE OF FINANCED POLICIES

**AGREEMENT OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)**

THE UNDERSIGNED INSURED:
1. In consideration of the premium payments being financed and, if applicable, down payment being advanced by LENDER to the insurance companies listed on the SCHEDULE OF FINANCED POLICIES, or their representative, promises to pay to the order of LENDER the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE, and if applicable, the amount of any down payment advanced by LENDER, subject to the provisions set forth in this Agreement.
2. a. Irrevocably appoints LENDER Attorney-in-Fact with full authority, in the event of default, to (i) cancel the said policies in accordance with the provisions herein, (ii) receive all sums assigned to LENDER and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement (Clauses (i) and (ii) not applicable in Florida).
   b. If there is an amount listed as "Brokers Fee" in the Schedule of Policies, this fee is charged under Section 2119 of the New York Insurance Law or the Law, if any, of the state in which insured lives. This fee is charged for obtaining and servicing the Policy for where the risk to be insured under the Policy resides (Not applicable in Florida, Virginia, Maryland or North Carolina).
   c. A fee of $ None , which is not being financed, has been charged under the provisions of these Laws. If none has been charged, the word "none" is shown (Not applicable in Florida, Virginia, Maryland or North Carolina).

**INSURANCE PREMIUM FINANCE AGREEMENT NOTICE**
NOTICE: 1. Do not sign this Agreement before you read it or if it contains any blank spaces. 2. You are entitled to a complete filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due and under certain conditions obtain a partial refund of the service charge. 4. Keep your copy of this Agreement to protect your legal rights.

NOTICE: See Pages 2 and 3 For Additional Important Information.

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON PAGES 2 AND 3

1-17-06
DATE

SIGNATURE AND TITLE OF INSURED(S) OR AGENT OR BROKER ON THEIR BEHALF (to extent permitted by Law)

**AGENT OR BROKER** Excel Underwriters Alliance, Inc.
**BUSINESS ADDRESS**
150 N Cooper Road, Suite A-3
PO Box 349

West Berlin    NJ    08091

**TEL. NO./E-MAIL ADDRESS**
(856) 767-7500

The Undersigned Agent or Broker:

1. Represents and warrants as follows: (a) to the best of the undersigned's knowledge and belief, the insured's signature is genuine or, to the extent permitted by applicable Law, the undersigned Agent or Broker has been authorized by the insured to sign this Agreement on their behalf, (b) the insured has received a copy of this Agreement, (c) the scheduled Policies are in full force and effect and the premiums indicated therefore are correct, (d) the insured may cancel all scheduled policies immediately upon request, (e) none of the Policies scheduled in the Agreement are non-cancelable, and (f) the down payment as indicated in Box "B" and installments totaling _____ have been collected and are being retained by us.

2. Upon cancellation of any of the scheduled Policies, the undersigned Agent or Broker agrees upon demand to pay to LENDER or its assigns their commission on any unearned premiums applicable to the cancelled Policies.

THE AGENT OR BROKER AGREES TO THE PROVISIONS ABOVE AND ON PAGE 3

1/27/06
DATE

SIGNATURE AND TITLE OF AGENT OR BROKER

EXHIBIT
A

## ADDITIONAL AGREEMENTS OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)

3. **Cancellation.** After the occurrence of a default in the payment of any money due the LENDER or a default consisting of a transfer to a third party of any of the scheduled policies, LENDER may request cancellation of the insurance policies listed in the schedule upon expiration of 10 days written notice of intent to cancel (13 days in New York, 15 days in Pennsylvania), provided said default is not cured within such period, and LENDER may proceed to collect the entire unpaid balance due hereunder or any part thereof by appropriate legal proceedings. If any default results in the cancellation of the Policy, insured agrees to pay a cancellation charge in accordance with applicable law (Maryland – difference between late charge and $100; North Carolina – None; Florida – None; Virginia - None).

4. **Money Received After Cancellation.** Any payment received after policy cancellation may be credited to the indebtedness due hereunder without any liability or obligation on the part of LENDER to request reinstatement of such cancelled policy. Any sum received from an insurance company shall be credited to the balance due hereunder; any surplus shall be paid over to the insured; in case of deficiency, the insured shall pay the same. (Maryland – LENDER may not collect from insured any amount less than $5 after cancellation).

5. **Application of Payments.** If applicable law permits, all payments received by LENDER will be applied to the oldest invoice first. Any remaining amounts will be applied to late fees and other charges (if applicable), the remainder (if any) would be applied to any other outstanding amounts.

6. **Returned Check Charge.** If any payment made by check is returned because the insured had no account or insufficient funds in the payor bank, insured will be charged the maximum fee, if any, permitted under applicable law (Maryland - $25; Florida - $15; Virginia - $20).

7. **Default.** If any of the following happens: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement; Insured will be in default; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. Clauses (b) and (c) not applicable in Florida, Virginia or North Carolina.

8. **Security.** To secure payment of all amounts due under this Agreement, insured assigns LENDER a security interest in all right, title and interest to the Policy, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under the Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee, (b)any return of the premium for the Policy, and (c) dividends which may become due insured in connection with the Policy. Clause (c) not applicable in Maryland.

9. **Right to Demand Immediate Payment in Full.** At any time after default, LENDER can demand and have the right to receive immediate payment (except to the extent otherwise provided by applicable law, in which case LENDER will have the right to receive such payment in accordance with such law) of the total unpaid balance due under this Agreement even if LENDER has not received any refund of unearned premium.

10. **Warranties.** Insured warrants to LENDER (a) to have received a copy of this Agreement and (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured. The insured represents that it is not presently the subject of or in contemplation of a proceeding in bankruptcy, receivership, or insolvency, or if it is a debtor in bankruptcy, the Bankruptcy Court has authorized this transaction.

11. **Early Payment.** At any time, insured may pay the whole amount still unpaid. If insured pays the full amount before it is due, insured will be given a refund for the unearned Finance Charge computed by the method of refund as required by applicable law.

12. **Assignments.** Insured may not assign the Policy or this Agreement without LENDER's written consent. However, insured does not need LENDER's written consent to add mortgagees or other persons as loss payees. LENDER may transfer its rights under this Agreement to anyone without insured's consent. All of LENDER's rights shall inure to the benefit of LENDER's successors and assigns.

13. **Collection.** If money is due and insured fails to pay, LENDER may collect the unpaid balance from insured without recourse to the security interest granted under this Agreement.

14. **Late Charges.** Upon default in payment of any installments for not less than five days (7 day in Virginia or such greater number of days required by applicable law), insured agrees to pay a late charge in accordance with applicable law. In no event shall such late charge exceed a maximum of 5% of such installment (greater of $25 or 1.5% in New Jersey; 5% in Massachusetts; $100 max in Maryland; greater of $10 or 5% in Florida).

15. **Finance Charge.** The finance charge begins to accrue from the effective date of this Agreement or the earliest inception date of the Insurance Policy(ies) listed on the Schedule of Policies, whichever is earlier. If LENDER terminates this Agreement due to a default, Insured will pay interest on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation and from said date until Insured pays the outstanding indebtedness in full to LENDER. To the extent permitted by applicable law, the Finance Charge may include a nonrefundable agreement charge not to exceed $20 ($10 in DE and NY; $12 in NJ; $15 in NC, RI, VA and SC; $16 in MA; $20 in FL).

16. **Attorney's Fees.** If LENDER hires an attorney (which is not a salaried employee) to collect any money insured owes under this Agreement, insured will pay that attorney's fees and other collection costs (including collectors' fees) if and to the extent permitted by applicable law (20% of amount due in Florida).

17. **Agent or Broker.** The Agent or Broker named on the front of this Agreement is neither authorized by LENDER to receive installments payable under this Agreement nor is authorized to make any representations to insured on LENDER's behalf (except to the extent expressly required by applicable law).

18. **Amendments.** If the insurance contract has not been issued at the time of the signing of this Agreement, and if the policies being financed are assigned risk policies or policies listed in a state fund, the policy numbers, if omitted herein, may be inserted in this Agreement after it has been signed (Maryland policies must show "Binder," cannot be blank).

19. **Effective Date.** This Agreement will not go into effect until it is accepted by LENDER in writing.

20. **Limitation of Liability.** Insured recognizes and agrees that LENDER is a lender and not an insurance company and that LENDER assumes no liability as an insurer hereunder. LENDER's liability for breach of any of the terms of this Agreement or the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of LENDER's gross negligence or willful misconduct.

21. **Governing Law.** The law of the State of the insured's residence shall govern this Agreement, except, for Maine insureds this contract is governed by the laws of the State of New York. For Virginia insured's this contract shall be governed by the laws of the State of Virginia.

22. **Signature and Acknowledgement.** Insured has signed and received a copy of this Agreement. If the insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of the insured. All the insured's listed in any Policy have signed. Insured acknowledges and understands that insurance premium financing law does not require an insured to enter into a premium financing agreement as a condition of the purchase of any insurance policy.

23. **Additional Insured.** There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.

| Policy Number and Prefix (itemized) | Place (X) If Not Authorized (See #3 below) | Full Name of Insurance Company and Name and Address of Policy Issuing Agent or Company Office To Which Premium is Paid and Notices are Sent | Type of Policy Premium | Audit Info* | Earn % Minimum | Term in Mos. Cov. By Prem. | Effective Date M/ D/ Y | Policy Premiums |
|---|---|---|---|---|---|---|---|---|
| MCP064105 | X | C: 916356 - OneBeacon Insurance Company<br>Avon, CT | E&O :0<br>FIN TXS/FEES<br>ERN TXS/FEES | | 0.00 | 12 | 12/20/2005 | 40,950.00<br>2,149.88<br>0.00 |
| 104239442 | | C: 352984 - Travelers Casualty & Surety Co<br>Orlando FL | E&O :0<br>FIN TXS/FEES<br>ERN TXS/FEES | | 0.00 | 12 | 12/20/2005 | 42,448.00<br>0.00<br>0.00 |

*(AR=ASSIGNED RISK), (A=AUDITABLE), (LS=LOSS SENSITIVE)

**TOTAL PREMIUMS (Record in "A")   85,547.88**

### ADDITIONAL REPRESENTATIONS & WARRANTIES OF BROKER OR AGENT

3. Warrants that it is the authorized Policy issuing agent of the insurance companies or the broker placing the coverage directly with the insurance company on all the Policies scheduled except those indicated with an "X" above.
4. Warrants that there are no policies included in this Agreement which are subject to audit, report of values, retrospective rating, or minimum earned premium, except as indicated below, and that, if there are any, the deposit or provisional premium thereon is not less than the anticipated premium to be earned for the full term of the policy.
   Policy No.(s):_____Minimum earned premium, if any: $_____
5. Warrants that there are no assigned risk policies in the Schedule of Policies except as indicated in the Schedule of Policies.
6. The Agent or Broker will hold in trust for LENDER any payments made or credited to the insured through the Agent or Broker directly, indirectly, actually or constructively, by any of the insurance companies listed in the Schedule of Policies and will pay the monies to LENDER upon demand to satisfy the then outstanding balance hereunder.
7. The Agent or Broker will promptly notify LENDER in writing if any information on this Agreement becomes inaccurate.
8. Warrants that all material information concerning the insured and the policies necessary for Lender to cancel the policies and receive the unearned premium has been disclosed to Lender.
9. There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

COMMUNITY HEALTH SOLUTIONS
OF AMERICA, LLC,

CASE NO. 8:06-bk-01215-CPM
CHAPTER 11

Debtor.

_____/

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF IMPERIAL PREMIUM FINANCE, INC.'S MOTION FOR RELIEF FROM STAY

STATE OF NEW JERSEY
COUNTY OF HUDSON

This affidavit is submitted in support of the Motion for Relief from Stay (the "Motion") filed by Imperial Premium Finance, Inc. ("Imperial").

1. My name is JOAN STRATTON, and I am employed as an Assistant Vice President at Imperial.

2. This affidavit is based upon Imperial's books and records. These records are regularly maintained in the course of Imperial's business, and it is the regular practice of Imperial to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for Imperial and regularly use and rely upon them in the performance of my duties.



3. On or about January 17, 2006, Community Health Solutions of America, LLC (the "Debtor"), executed and delivered a Premium Finance Agreement, Disclosure Statement and Security Agreement (the "Finance Agreement") to Imperial. A copy of the Finance Agreement is attached to the Motion as **Exhibit "A."**

4. Imperial perfected its interest in the insurance policy that is the subject of the Finance Agreement in accordance with Section 627.844, *Florida Statutes.*

5. On April 20, 2006, Debtor defaulted under the terms of the Finance Agreement by failing to make the installment payment due in the amount of $7,979.45, plus late charges in the amount of $398.97. The Debtor subsequently paid the April installment late on May 8, 2006.

6. As of May 11, 2006, the Debtor owes Imperial the total amounts:

| | |
|---|---|
| Principal Balance | $39,897.25 |
| March Late Fee | $398.97 |
| April Late Fee | $398.97 |
| **TOTAL AMOUNT OWED** | **$40,695.19** |

7. On the Petition Date, the value of the collateral for the Financing Agreement was $63,476.53. On the Petition Date, Debtor owed Imperial $55,856.15.

8. Imperial has employed the services of the law firm of Holland & Knight LLP in this matter and is obligated to pay Holland & Knight LLP

reasonable attorneys' fees for its services, along with all costs and expenses incurred in this proceeding.

9. I have reviewed the motion for relief from stay filed by Imperial in this proceeding, and the facts contained therein are true and correct to the best of my knowledge, information and belief.

FURTHER AFFIANT SAYETH NAUGHT.

IMPERIAL PREMIUM FINANCE, INC.

By: _____
JOAN STRATTON
Assistant Vice President

The foregoing instrument was acknowledged before me this 12 day of May, 2006, by JOAN STRATTON who is personally known to me or who has produced _____ as identification.

_____
Notary Public-State of New Jersey
LISA R. CHANDLER
Notary Public, State of New Jersey
I.D. No.: 2319771
Commission Expires January 24, 2009

# 3768500_v2