# EXHIBIT  7

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

COMMUNITY HEALTH SOLUTIONS
OF AMERICA, LLC,

        Debtor,

Case No: 8:06-bk-1215-CPM
CHAPTER 11

_____/

## AFFIDAVIT OF FRANK AMODEO IN OPPOSITION TO CHAPTER 11 TRUSTEE'S APPLICATION TO EMPLOY COUNSEL

STATE OF FLORIDA
COUNTY OF ORANGE

      BEFORE ME, the undersigned authority, personally appeared Frank Amodeo, who, being duly sworn, testifies as follows:

    1.    I, Frank Amodeo, oppose the employment of the law firm of Gray Robinson, P.A., and specifically of Mr. John Anthony as legal counsel for the Chapter 11 Trustee in the above-captioned action. Mr. Anthony has filed an affidavit with this Court (the "Affidavit") which is both inaccurate and misleading.

    2.    Mr. Anthony asserts in the Affidavit that he has personal knowledge of the matters therein contained. Nevertheless, the Affidavit is materially inaccurate for the reasons set forth below.

    3.    Mr. Anthony's firm serves as counsel to the undersigned or to entities in which the undersigned has an interest. The assertions to the contrary contained in paragraphs 11 and 13 of the Affidavit are, as Mr. Anthony must have known or reasonably should have known, false. Specifically, Gray Robinson, P.A., currently represents me or companies of which I am the sole owner and control person as follows:

    a.   The firm acts as general counsel for Tenshi Enterprises (indeed, in this capacity it prepared the form documents used in the transactions between Tenshi and the Debtor).

    b.   The firm acts as litigation counsel for Presidion Solutions, Inc.

    c.   The firm prepresents Sunshine Company in class action litigation regarding health insurance coverage (an issue which has been raised by the Office of the United States Trustee as being relevant to my interaction with the Debtor in the above-captioned proceeding).

d. The firm represents both Wellington Capital Group, Inc. and me in connection with certain general business issues and indemnification in connection with the administration of Sunshine Companies.

4. In the Affidavit, Mr. Anthony lists several matters invoking my name and suggesting that I was engaged in fraudulent activity in such matters when, as counsel of record in those actions, he certainly knows better from personal experience. The Affidavit contains incorrect and misleading statements. A review of the facts underlying his sworn statement makes it clear that the contents of the Affidavit serve only to mislead the Court by providing incomplete information that, when viewed in light of the actual facts, makes his filing both factually incorrect and materially misleading.

5. Specific examples of such inaccuracies in the Affidavit include the following:

a. The bankruptcy case of Atlas Welding Company, Inc. is referenced in the Affidavit as a case in which Merrill Lynch filed a claim against me which alleged my involvement in an alleged scheme to defraud the creditors of Atlas. There were never any such claims threatened or filed. Actually, Atlas (the Debtor) entered into a stipulation with Primary Bookkeeping, Inc. (Primary), of which I was a surety/creditor, a copy of which is annexed hereto as Exhibit A and incorporated herein by reference, wherein those parties agreed that Primary would release its assertion of secured status for its claim against Atlas and reduce the amount of its claims. The Debtor agreed not to object to the proposed amended claims of Primary in exchange for an agreement that Primary's claims would be treated as administrative claims in the Atlas case. Indeed, Primary agreed to provide funds to assist the Debtor in the prosecution of certain claims in certain state court or related proceedings. No claims of any kind were asserted against me in this action and I was never a party to any of these proceedings. Mr. Anthony acknowledges that Merrill Lynch does not contemplate asserting any claims against me. Indeed, he does not allege that he has any knowledge of any claims but rather chooses to assert that someone from the debtor so informed Merrill Lynch.

b. In the affidavit of Mr. Anthony he cites to the bankruptcy case of Smith International Enterprises and a related case filed in federal district court and styled Merrill Lynch Business Financial Services, Inc. v. Frank L. Amodeo, et. al, Case No.: 02-61191-CIV-HUCK/Turnoff ("Smith Case").

Mr. Anthony indicates in his affidavit that a fraud claim was asserted in the Smith Case against me thus creating the impression that the undersigned did something improper in that case. What Mr. Anthony does not tell this Court, (although, again, he was counsel of record), is that Merrill Lynch agreed on October 14, 2003, to dismiss its unfounded

claims, with prejudice, against the undersigned for zero dollars and that on October 30, 2003, an order was entered by the Honorable Judge Paul C. Huck dismissing Merrill Lynch's claim with prejudice. A copy of this Order is annexed hereto and made a part hereof as Exhibit B. It is respectfully submitted that to suggest that I was involved in a fraud against Merrill Lynch (or anyone else) in a sworn statement to this Court is an intentional misstatement by Mr. Anthony calculated to defame me.

c.    Similarly, the United States Bankruptcy Court for the Middle District of Florida also had occasion to deal with the bankruptcy of Smith International Enterprises, Inc. (the "Smith Bankruptcy Case"). Mr. Anthony is familiar with the Smith Bankruptcy Case since he was also counsel of record in that proceeding. Again, contrary to Mr. Anthony's assertions made under oath in his Affidavit, the Honorable Karen S. Jennemann entered a memorandum opinion in that matter on March 23, 2005, dismissing Merrill Lynch's accusations against me as unfounded. A copy of this memorandum opinion is annexed hereto as Exhibit C and is incorporated herein by reference. In her opinion, Judge Jennemann stated as follows:

> Kapila (the Trustee) worked hard to unravel the financial complexities of the debtor's operations, and his services certainly provided assistance to the Court. As the case developed, however, it became apparent that **Merrill Lynch's claims were largely unfounded.** Kapila eventually concluded that the debtor had few valuable assets and no potential to reorganize. **The hidden assets alleged by Merrill Lynch simply did not exist.**

> Order, p.2 (emphasis added)

6.    In light of the foregoing, it is difficult to comprehend how Mr. Anthony can, with candor, advise this Court that the undersigned was part of a fraud against Merrill Lynch in the Smith Case or the Smith Bankruptcy case. His conduct should not go unnoticed and appropriate action should be taken to remind Mr. Anthony of his duty to be honest and forthright with this Court, of which he, after all, an officer.

7.    While Mr. Anthony's motives are known only to him, his false statements are readily apparent and their inaccuracy is both material and verifiable.

**FURTHER AFFIANT SAYETH NAUGHT**

*[signature]*

**FRANK AMODEO**

SWORN TO AND SUBSCRIBED before me this 10th day of ~~June,~~ July 2006, by Frank Amodeo, who is <u>personally known to me</u> or has produced identification: _____, and who did take an oath.

RACHEL R ECKLES
MY COMMISSION # DD445605
EXPIRES: June 28, 2009
(407) 398-0153    Florida Notary Service.com

*Rachel R Eckles*
Notary Public, State of Florida

*Rachel R Eckles*
Printed Name of Notary



EXHIBIT A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:                                    CASE NO: 3:04-BK-01361-JAF

ATLAS WELDING
COMPANY, INC.,

_____ Debtor. /

## STIPULATION RESOLVING ALL ISSUES BETWEEN
## DEBTOR & PRIMARY BOOKKEEPING, INC.

Atlas Welding Company, Inc. ("Debtor"), and Primary Bookkeeping, Inc.
("Primary") (collectively "the parties"), by and through undersigned counsel, hereby
recite the following in consideration of a final agreement, subject to the approval of
this Honorable Court, between Debtor and Primary of all outstanding issues between
them in this proceeding:

### RECITALS

1.    On February 11, 2004, Debtor filed a Petition for relief pursuant to Chapter 11
      of the Bankruptcy Code.

2.    The Debtor has been authorized to operate its business as a debtor-in-
      possession.

3.    Primary is a party-in-interest in this cause, and has claims pending in this
      action.

Page 1 of 6

4. Hearings have been held in this cause on certain of Primary's motions and on the Debtor's disclosure statement as variously amended.

5. The Supplement to the Second Amended Disclosure Statement was filed by the Debtor on June 22, 2005.

6. The Amended Plan was filed by the Debtor on August 15, 2005.

7. On May 6, 2005, the Debtor filed an Objection to Primary's Claims 7 and 65 ("Debtor's Objections to Primary's Claims").

8. Primary's Response to Objection to Claim 65 and Objection to Claim 7 was filed June 4, 2005.

9. On August 5, 2005, Primary filed a Motion to Dismiss Atlas Welding Company, Inc.'s case, or in the Alternative to Convert Case to Chapter 7 ("Primary's Motion").

10. On September 2, 2005, the parties filed a Stipulation requesting the Court to continue the hearing on the Plan confirmation that was scheduled for September 8, 2005.

11. The Court entered its Order setting a hearing for October 26, 2005, at 10:30 a.m. on the status of the parties' efforts to resolve the pending matters between Debtor and Primary.

12. The parties to the Stipulation have come to an agreement concerning

confirmation of the Amended Plan, Primary's Motion, Debtor's Objection to Primary's Claim and resolution of all issues in this cause between the parties.

13. The parties propose that, in due course, the Court approve this Stipulation that resolves all outstanding matters between them.

THEREFORE, the parties hereby STIPULATE AND AGREE to the following:

14. The foregoing recitals are true and correct, and are a part of this stipulation.

15. Reference to "the claims" of Primary are all inclusive and are to both the claims filed by Primary as a creditor of the Debtor in this proceeding, and to the claim(s) lodged in the pending Chapter 7 proceeding filed by Debtor Atlas Structural, Inc., a Florida corporation, in Case Number 3:03-BK-12569-JAF, US Middle District Bankruptcy Court (Jacksonville Division).

16. Primary releases and forever relinquishes its assertion and demand to any secured status of its claims.

17. Primary reduces its claims to an aggregate of $500,000.00 in both the Atlas Welding and the Atlas Structural bankruptcy proceedings referenced above. The allocation of the $500,000.00 among Primary's claims will be based upon a *pro rata* reduction of the amounts claimed.

18. Primary's claims are to be treated as general unsecured claims of the Debtors.

19. Primary will vote for the confirmation of the Plan of Reorganization, as will

be amended, of the Debtor in this cause provided that the Amended Plan is faithful to this Stipulation and is designed to effectuate the intent of this Stipulation.

20.  Primary will provide, or cause to be provided, a maximum of $50,000.00 to assist Atlas Structural in the prosecution of certain suits that have been filed against the Defendants (for failure to pay for materials and labor of Atlas Welding and Atlas Structural) in the following cases:

a.  2003-CA-005831 (filed in Orange County Circuit Court);

b.  2004-CA-2737 (filed in Lake County Circuit Court);

c.  2004-0534-CA-03 (filed in Indian River County Circuit Court);

d.  2004-CA-362 (filed in Walton County Circuit Court);

21.  The funds provided by Primary, or at the direction or assistance of Primary, will be treated as administrative claims in the Atlas Structural proceeding, and will be afforded the priority of such administrative claims.

22.  The parties will use their best efforts to insure that there is either a substantive consolidation of the proceedings currently pending for Debtors Atlas Welding and Atlas Structural, or that the device employed will have the same practical effect as if there had been a substantive consolidation of those proceedings.

23.  Should there not be effected such a consolidation (actually or practically) for

any reason whatsoever, then Primary has the right to void this Stipulation in its sole discretion.

24.   The parties will undertake the preparation and execution of all documents and take all action necessary to effectuate the intent of this stipulation.

25.   Preparation of an amended disclosure statement and a second amended plan of reorganization are necessary to bring them into conformance with this stipulation.

26.   Primary reserves all objections to confirmation pending final order of this Court approving the terms of this Stipulation and upon final resolution of all issues in this Case between the parties to this Stipulation.

Dated this 25th day of October 2005

ATLAS WELDING COMPANY, INC.


By:    /s/ Robert N. Reynolds
Robert N. Reynolds, Esquire
Florida Bar No.: 143739
501 N. Orlando Ave., #313-240
Winter Park, FL 32789
(407) 647-4262 (Telephone)
(407) 629-1622 (Facsimile)
Attorney for Debtor Welding

Dated this 25th day of October 2005

PRIMARY BOOKKEEPING, INC.


By: /s/  Charles W. McBurney, Jr.
Charles W. McBurney, Jr., Esquire
Florida Bar No.: 354503
6550 St. Augustine Rd., Suite 105
Jacksonville, Florida 32217
(904) 731-0002 (Telephone)
(904) 731-3885 (Facsimile)
Attorney for Primary Bookkeeping, Inc.

## CERTIFICATE OF SERVICE

[Charles: We will include here whomever is
necessary not receiving ECF notification]



— EXHIBIT B —

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 02-61191-CIV-HUCK

MERRILL LYNCH BUSINESS
FINANCIAL SERVICES, INC.,

             Plaintiff,

vs.

FRANK L. AMODEO and
JAMES SADRIANNA,

             Defendants.

_____/

**CLOSED
CIVIL
CASE**

### FINAL ORDER OF DISMISSAL

THIS MATTER is before the Court on the Court's *sua sponte* review of the record. On October 14, 2003, the parties advised that the case had been settled. Documents were to have been submitted by October 24, 2003  The Court has considered the record, and is otherwise advised. Accordingly, it is

ORDERED AND ADJUDGED that this case is DISMISSED WITH PREJUDICE. The Court retains jurisdiction to enforce the parties' settlement agreement. All pending motions are DENIED as moot. The Clerk shall CLOSE this case.

DONE and ORDERED in Chambers, Miami, Florida this 30th day of October, 2003.

                          PAUL C. HUCK
                          UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record



**— EXHIBIT C —**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re                  )
                      )
SMITH INTERNATIONAL    )    Case No. 6:02-bk-04459-KSJ
ENTERPRISES, INC.,        )    Chapter 7
                      )
      Debtor.       )
                      )

MEMORANDUM OPINION
DENYING SONEET KAPILA'S MOTION TO COMPEL TRUSTEE
TO FILE A MOTION TO SURCHARGE MERRILL LYNCH FINANCIAL SERVICES, INC.

This case came on for hearing on November 15, 2004, on the Motion to Compel Trustee to File a Motion to Surcharge Merrill Lynch Financial Services, Inc. ("the Motion") filed by the Chapter 11 examiner, Soneet R. Kapila ("Kapila"), and his accounting firm, Kapila & Company (Doc. No. 213). In the Motion, Kapila asks the court to compel the Chapter 7 trustee, James C. Orr, to surcharge collateral of the primary secured creditor of the debtor, Merrill Lynch Financial Services, Inc., pursuant to Section 506 of the Bankruptcy Code.[1] Alternatively, Kapila seeks an order allowing him to seek a surcharge in the trustee's stead. Merrill Lynch filed an Objection (Doc. No. 216), and the trustee filed a Response (Doc. No. 217) opposing the Motion. Upon consideration of the evidence, pleadings, the arguments of the parties, and the law, the Motion is denied for the reasons explained below.

On April 30, 2002, the debtor, Smith International Enterprises, Inc., filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. The debtor was in the business of producing and selling encrypted plastic cards used for such things as credit cards and hotel keys.

---

[1] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

Merrill Lynch was the primary secured creditor of the debtor. On the date of the bankruptcy filing, the debtor owed Merrill Lynch approximately $1.7 million under two cross-collateralized loans. Merrill Lynch held a blanket lien encumbering all of the debtor's assets.

Shortly after the bankruptcy filing, on May 23, 2002, Merrill Lynch filed an Emergency Motion to Appoint a Trustee (Doc. No. 20) alleging improprieties by the principal operating the debtor and irregularities in the debtor's financial practices. What Merrill Lynch most desired was to appoint their own financial advisor as the Chapter 11 trustee. If appointed, the cost of the financial advisor would be borne by the bankruptcy estate, not Merrill Lynch.

However, due to the possible conflict of interest arising if the financial advisor working for Merrill Lynch were retained and finding no need for the appointment of a Chapter 11 trustee, the Court granted Merrill Lynch's motion to a limited extent—an examiner not affiliated with Merrill Lynch was to be appointed. Soneet Kapila was selected for the position, and the order appointing him as examiner was entered on June 18, 2002 (Doc. No. 46). He, with the help of his accounting firm,[2] promptly began the work culminating in the report he filed shortly thereafter on July 11, 2002 (Doc. No. 69).

Kapila worked hard to unravel the financial complexities and alleged irregularities of the debtor's operations, and his services certainly provided assistance to the Court. As the case developed, however, it became apparent that Merrill Lynch's claims were largely unfounded. Kapila eventually concluded that the debtor had few valuable assets and no potential to reorganize. The hidden assets alleged by Merrill Lynch simply did not exist.

Therefore, largely due to Kapila's efforts, the case was converted to a Chapter 7 liquidation case on August 26, 2002. James C. Orr was appointed as the Chapter 7 trustee and

---

[2] The court also appointed Kapila's accounting firm, Kapila & Company, as accountants, nunc pro tunc to June 20, 2002 (Doc. No. 90).

has administered the case. Due to Merrill Lynch's blanket lien on all of the debtor's few assets, however, no assets were recovered for the benefit of any creditors other than Merrill Lynch. Indeed, Merrill Lynch recovered only pennies on the dollar. The estate has no funds to distribute to creditors. Thus, although Kapila completed his task superbly, he was not paid because the estate is administratively insolvent.

Kapila argues that his services benefited Merrill Lynch by preventing the further dissipation or diminishment of its collateral by the debtor's principals, who were ultimately removed from control. For this reason, Kapila asked the trustee to file a motion pursuant to Section 506(c) of the Bankruptcy Code to compel Merrill Lynch to pay the cost of his services as an examiner and for his accountants. During the pendency of his work, from June 20, 2002, through August 31, 2002, Kapila and his company incurred fees and costs in the amount of $56,762.37.

The trustee refused Kapila's request to pursue a motion to surcharge Merrill Lynch's collateral, concluding that such an action would yield no benefit to the estate (Doc. No. 217). In addition, the trustee has no money to hire a lawyer or any other professional to assist him in such litigation. The trustee consulted with the United States Trustee's Office concerning Kapila's request, and they too concurred with his analysis. Therefore, since the trustee refused to seek surcharge against Merrill Lynch, on April 28, 2004, Kapila filed the Motion asking the Court to compel the trustee to do so. Alternatively, Kapila requests an order allowing him to independently file a surcharge motion.

The trustee requests that the Court deny the Motion as the estate simply has no assets available to fund this or any other litigation. Certainly, the Chapter 7 case lacks sufficient funds for the trustee to pursue this surcharge claim. Merrill Lynch also objects to the Motion, noting

that it received only $2,500 when it liquidated its collateral after the case converted to Chapter 7 (Doc. No. 216, paragraph 9). Moreover, Merrill Lynch believes it had an agreement with Kapila not to pursue further payment for his work as examiner because Merrill Lynch retained Kapila after the case was converted to Chapter 7 to provide testimony in federal court litigation pending against one of the principals of the debtor, Mr. Frank Amodeo. Although Merrill Lynch ultimately abandoned the litigation against Mr. Amodeo, concluding that he, just like his company, was financially insolvent, and Kapila was not required to testify, Merrill Lynch still believed that the retention and attendant payments to Kapila were conditioned upon an understanding that he would not seek any further payments from them for his duties as examiner. Lastly, Merrill Lynch argues that Kapila has failed to show any basis why the surcharge would be granted even if he were permitted, or the trustee was compelled, to seek such recovery.

Two issues are presented. Kapila argues that, in light of the trustee's refusal to voluntarily pursue a surcharge claim, he, with court approval, can step into the trustee's shoes and pursue recovery from Merrill Lynch on behalf of the estate pursuant to Bankruptcy Code Section 506(c). The first issue is whether Section 506(c) permits this type of derivative action. The second issue is whether the Court can or should compel the trustee to act contrary to his reasoned judgment and require him to pursue the surcharge litigation under Section 506(c).

Bankruptcy Code Section 506(c) specifies when a surcharge is permitted against secured collateral and provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

A surcharge under Section 506(c) is not an administrative claim; rather, it is an assessment against a secured party's collateral. In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1067 (9th Cir. 2001). Surcharging collateral subject to a security interest is the exception and not

the rule for recovering costs and expenses associated with the preservation or disposition of estate property. Ordinarily, the costs and expenses detailed in Section 506(c) are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral. Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 483 (4th Cir. 1994) (citing IRS v. Boatmen's First Nat'l Bank of Kan. City, 5 F.3d 1157, 1159 (8th Cir. 1993)). In some circumstances, however, these costs and expenses are charged against property subject to a security interest in order "to prevent a windfall to a secured creditor at the expense of the estate." 26 F.3d 481, 483 (citing Boatmen's, 5 F.3d at 1159). Section 506(c) allows the trustee to recover these amounts "from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor." 26 F.3d at 483. Here, Kapila argues that Merrill Lynch obtained the benefit of his efforts to preserve its collateral and, therefore, the Court should tax that collateral with his costs and expenses.

Both issues before the Court here were also addressed by the bankruptcy court in In re Suntastic USA, Inc., 269 B.R. 846 (Bankr. D. Ariz. 2001). In Suntastic, several administrative claimants filed motions seeking standing to pursue surcharge claims or, alternatively, an order requiring that the Chapter 7 trustee do so on their behalf. Suntastic, 269 B.R. at 847. Approximately $250,000 in post-petition cash collateral was available, but the total administrative claims asserted exceeded $400,000. Suntastic, 269 B.R. at 847. There were no unencumbered funds in the estate. 269 B.R. at 850.

The United States Bankruptcy Court for the District of Arizona ruled that the administrative claimants did not have standing to pursue such surcharge claims and also declined to force the trustee to do so where recovery would inure only to the benefit of the administrative claimants and not to the estate as a whole. The bankruptcy court based its ruling on three cases: the decision of the United Supreme Court in Hartford Underwriters Insurance Company v. Union

Planters Bank, N.A., 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), the Ninth Circuit Court of Appeals in In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061 (9th Cir. 2001), and the Fourth Circuit Court of Appeals in Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JFK Chevrolet, Inc.), 26 F.3d. 481 (4th Cir. 1994).

In Hartford, the operating Chapter 11 debtor failed to pay its monthly insurance premiums, but Hartford continued to provide insurance. When the case converted to a Chapter 7 case, Hartford filed an application to surcharge the collateral of a secured creditor to recover approximately $50,000 in unpaid premiums. The estate had no unencumbered funds from which Hartford could otherwise seek recovery.

The question before the United States Supreme Court was whether Hartford had standing to seek the surcharge or whether it could only be sought by the trustee. Hartford, 530 U.S. at 5-7, 120 S.Ct. at 1947-8; Suntastic, 269 B.R. at 848. Based on the express language of Section 506(c) "that specifically referred to 'the trustee,' and no other party," the Supreme Court concluded that only the trustee could recover under the statute "notwithstanding the lack of a specific prohibition against other parties bringing such a claim." Suntastic, 269 B.R. at 848. The Supreme Court explicitly rejected pre-Code practice and policy arguments urged in support of making Section 506(c) available to non-trustees, noting that the trustee's unique role made it "entirely plausible" that Congress might provide bankruptcy trustees with powers that were unavailable to others. Hartford, 530 U.S. at 7, 120 S.Ct. at 1947. The rule following Hartford, therefore, is that Section 506(c) is a remedy exclusive to the trustee. Hartford, 530 U.S. at 14, 120 S.Ct. at 1951. No other party has an independent right of recovery under Section 506(c).

In Hartford, however, unlike in the instant case and in Suntastic, the petitioner did not ask the trustee to pursue the surcharge claim or seek the bankruptcy court's permission to do so derivatively. Rather, the petitioner only asserted an independent right to use Section 506(c),

which the Court unequivocally denied. Hartford, 530 U.S. at 13, 120 S.Ct. at 1951. Accordingly, the Supreme Court did not address the question now before this Court and also before the bankruptcy court in Suntastic regarding "whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under [Section] 506(c)." Hartford, 530 U.S. at 13, 120 S.Ct. at 1951, n. 5.

Without an explicit rule from the Supreme Court addressing either derivative actions or a trustee's refusal to pursue a requested surcharge, the Suntastic court turned to the binding decision of the Ninth Circuit Court of Appeals in In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061 (9th Cir. 2001) and the decision of the Fourth Circuit Court of Appeals in Ford Motor Credit, 26 F.3d. 481 (4th Cir. 1994). In Debbie Reynolds, the Ninth Circuit Court of Appeals explained that, following Hartford, unsecured creditors could not rely on Section 506(c) to surcharge collateral of a secured creditor under any circumstances.[3] Debbie Reynolds, 255 F.3d 1065-66 ("Hartford Underwriters makes clear that [unsecured creditors] cannot, under any circumstances, seek a surcharge because [they have] no standing to do so."). Hence, derivative actions brought by third party beneficiaries to enforce the rights of another are, by definition, precluded under the Ninth Circuit Court of Appeals' interpretation of Hartford. Accordingly, the Suntastic court concluded "that, in the Ninth Circuit, even where the trustee has no economic incentive to pursue recovery under 506(c), nobody else may pursue surcharge—period." 269 B.R. at 849.

---

[3] In Debbie Reynolds, the Ninth Circuit Court of Appeals explained that Hartford overruled one of its earlier decisions, North County Jeep and Renault, Inc., v. Gen. Electric Capital Corp. (In re Palomar Truck Corp.) 951 F.2d 229 (9th Cir. 1991), in which the Ninth Circuit had held that parties providing a benefit to secured creditors may seek a surcharge under 506(c) when a trustee has no economic incentive to do so. Debbie Reynolds, 951 F.2d at 1066 (citing Palomar, 951 F.2d at 232).

Having determined that no party other than the trustee is empowered or permitted to pursue surcharges under Section 506(c), the Suntastic court next turned to the decision of Ford Motor Credit[4] to determine whether a trustee could properly refuse a request to pursue surcharge. 26 F.3d 481. The Fourth Circuit Court of Appeals acknowledged that limiting the use of Section 506(c) to trustees was consistent with the Bankruptcy Code's fundamental purpose of providing an equitable distribution to similarly situated creditors and emphasized that "not only does a trustee usually have strong incentive to pursue § 506(c) claims, but both the trustee and debtor in possession have a fiduciary duty to pursue viable § 506(c) claims that would benefit the estate."[5] 26 F.3d at 484, 485. Notably, the "court went on to state that if a trustee refuses to pursue the 506(c) surcharge, the third party could seek a court order requiring the trustee to do so, request the court remove the trustee, or if the debtor in possession is in control of the estate, request the appointment of a trustee." 269 B.R. at 850; 26 F.3d at 485-86. Thus, the Ford Motor Credit decision endorsed one of the remedies sought here and in Suntastic: third party creditors can seek a court order requesting or compelling the trustee to seek surcharge.

Accordingly, based on Ford Motor Credit, the Arizona Bankruptcy Court in Suntastic determined that, in the right circumstances, courts could compel a Chapter 7 trustee to pursue surcharge. The test articulated in Suntastic is "whether a trustee may refuse to pursue a Section

---

[4] Although the decision in Ford Motor Credit was rendered prior to the decision of the United States Supreme Court in Hartford, the case remains sound law. In Ford Motor Credit, the Fourth Circuit Court of Appeals also held that, under the plain language of Section 506(c), only trustees and debtors-in-possession have standing to recover costs from the collateral of a secured creditor. 26 F.3d at 486.

[5] See also, Suntastic, 269 B.R. at 849 (citing Kowal v. Malkemus (In re Thompson)), 965 F.2d 1136, 1145 (1st Cir.1992) ("Chapter 7 trustees are 'charged with the fiduciary duty to administer the chapter 7 estate expeditiously in the best interests of the estate'"); Martin-Trigona v. Ferrari (In re WHET, Inc.), 750 F.2d 149, 149 (1st Cir.1984) ("trustees 'owed a fiduciary duty to debtor and creditors alike to act fairly and protect their interests'").

506(c) claim after request by an administrative claimant is whether doing so may conceivably benefit the estate, without regard to whether the action will benefit the requesting claimant." Suntastic, 269 B.R. at 850. Since the administrative creditor was unable to show that the estate would benefit, the court declined to compel the trustee to file the 506(c) claim against the secured creditor.

This Court holds that individual creditors lack standing to pursue Section 506(c) surcharge claims and adopts the test explained in Suntastic, finding the same conclusion is warranted here. As was the case in Hartford and Suntastic, there are no funds in the debtor's estate. The trustee has no money to hire a professional to pursue a Section 506(c) claim. Moreover, the trustee perceives that, even if such an action were filed, it would likely yield no benefit to the estate. The only creditor who conceivably could benefit is the movant and any expected recovery would be de minimus in light of the fact that the secured creditor received only $2,500 upon liquidating its secured collateral. Based on these circumstances, the Court concludes that it would be improper and unjust to require the trustee to take action contrary to his reasoned judgment that is unlikely to benefit the estate. There is simply no basis to compel the trustee to pursue surcharge. However, in a different case, the Court could conceive of a situation where the trustee would be compelled to bring a surcharge claim, if the litigation would benefit the estate. In this case, the movant has failed to demonstrate any such benefit.

Furthermore, only trustees and debtors in possession in Chapter 11 cases properly have standing to pursue surcharge claims. Trustees are in a unique position of having a global vantage point in a bankruptcy case. They act for the benefit of the entire estate attempting to maximize the value of the estate and increase distributions to creditors. No sole creditor holds the same perspective; only the trustee can assess whether the effort to pursue the surcharge recovery will

increase the likelihood of assets available for distribution or simply drain the estate by incurring additional administrative costs such as attorney fees. Allowing an individual creditor to pursue a surcharge claim is not appropriate. Accordingly, the Motion is denied. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on the 23rd day of March, 2005.

_____

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Smith International Enterprises, Inc., 2625 Edgewater Drive, Orlando, Florida 32804

Peter N Hill, Wolff Hill McFarlin & Herron PA , 1851 West Colonial Drive, Orlando, FL 32804

James C. Orr, Chapter 7 Trustee, P.O. Box 780519, Orlando, FL 32878-0519

United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801

All creditors and interested parties