Exhibit "A"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

COMMUNITY HEALTH SOLUTIONS
OF AMERICA, LLC,

        Debtor.

_____/

Chapter 11
Case No. 8:06-BK-01215-CPM

## **PLAN OF REORGANIZATION FOR**
## **COMMUNITY HEALTH SOLUTIONS OF AMERICA, LLC**

John A. Anthony, Esq.
Cheryl Thompson, Esq.
Gray Robinson, PA
201 N. Franklin Street
Suite 2200
Tampa, Florida 33602
(813) 273-5000
(813) 273-5145 (telecopy)
e-mail: janthony@gray-robinson.com
Counsel for Larry S. Hyman,
the Chapter 11 Trustee

Jeffrey W. Warren, Esq.
Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, Florida 33601-3913
(813) 224-9255
(813) 223-9620 (telecopy)
e-mail: jwarren@bushross.com

and

Thomas A. Lash, Esq.
Damon M. Ellis, Esq.
Saxon Gilmore Carraway Gibbons
Lash & Wilcox, P.A
Suite 600
201 E. Kennedy Blvd.
Tampa, Florida 33602
(813) 314-4500
(813) 314-4555 (telecopy)
e-mail: tlash@saxongilmore.com
Counsel for Mirabilis Ventures, Inc.

Mark J. Bernet, Esq.
Buchanan Ingersoll & Rooney PC
SunTrust Financial Center
401 E. Jackson St.
Suite 2500
Tampa, Florida 33602
(813) 222-8180
(813) 222-8189 (telecopy)
e-mail: mark.bernet@bipc.com
Co-counsel for Common Paymaster
Corporation

# PLAN OF REORGANIZATION FOR
## COMMUNITY HEALTH SOLUTIONS OF AMERICA, LLC

Larry S. Hyman, the Chapter 11 Trustee, Mirabilis Ventures, Inc., and Common Paymaster Corporation (collectively, the "Plan Proponents") propose this plan of reorganization for the resolution of the outstanding Claims (as hereinafter defined) and Interests (as hereinafter defined) of Community Health Solutions of America, LLC. Reference is made to the Disclosure Statement (as hereinafter defined) distributed contemporaneously herewith for a discussion of the Debtor's history, businesses, properties, results of operations, risk factors and a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of this Plan.

1.1    "Administrative Claim" means any Claim for the payment of any Administrative Expense.

1.2    "Administrative Expense" means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) of the Bankruptcy Code including, but not limited to, any such cost or expense constituting (1) an actual and necessary post-petition cost and expense of preserving the Estates or operating the businesses of the Debtor, (2) a post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (3) a payment that is to be made under this Plan to cure defaults on executory contracts and unexpired leases and (4) compensation or reimbursement of an expense to the extent allowed by the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code and (b) any fee or charge assessed against the Estates under 28 U.S.C. §1930.

1.3    "Affiliate Issues" mean and include, collectively, the Chapter 11 Trustee Recovery Claims, the Chapter 11 Trustee Substantive Consolidation Claims, the Debtor's Lender Related Claims and the Debtor's Simmons Related Claims.

1.4    "Allowed" means and includes, with respect to any Claim, (a) any Claim (other than a Disputed Claim), proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) that is listed in the Schedules as liquidated in amount and not disputed or Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the

Bankruptcy Rules or the Bankruptcy Court or (2) the Claim has been allowed by a Final Order of the Bankruptcy Court (but only to the extent so allowed).

1.5 "Allowed Amount" means the dollar amount in which a Claim is Allowed. No amount shall be Allowed for or on account of punitive damages, penalties or post-petition interest on account of any Claim except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

1.6 "Bankruptcy Case" means the Chapter 11 case for the Debtor that was filed on the Petition Date.

1.7 "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§101-1330, as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Bankruptcy Case.

1.8 "Bankruptcy Court" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Bankruptcy Case or, to the extent the reference is withdrawn, the District Court.

1.9 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Bankruptcy Case, together with all amendments and modifications to the extent applicable to the Bankruptcy Case.

1.10 "Business Day" means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.11 "Cadent Companies" mean and include, collectively, the Debtor, Cadent Underwriters, Inc., Cadent Administrators, Inc., BenComp National, Inc., and Community Health Solutions of America, Inc.

1.12 "Cash" means lawful currency of the United States of America and its equivalents.

1.13 "Causes of Action" shall have the meaning ascribed to such term in Section 8.5 of the Plan.

1.14 "Chapter 11 Trustee" means Larry S. Hyman, as appointed by the Order Approving Application for Authority to Appoint a Chapter 11 Trustee entered by the Bankruptcy Court on May 22, 2006 and his successors and the agents, servants, employees, representatives and assigns of each of them.

1.15 "Chapter 11 Trustee Recovery Claims" means any right or the assertion of any right to payment from Mirabilis and Paymaster, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, arising from, in connection with, or relating in any way to, the matters asserted in the adversary proceeding filed by the Chapter 11 Trustee styled *Larry S. Hyman, Chapter 11 Trustee of the Estate of Community Health Solutions of America, LLC, and*

*on behalf of Cadent Underwriters, Inc., vs. Mirabilis Ventures, Inc., and Common Paymaster Corporation,* adv. proc. no. 8:06-ap-00328-CPM (the "Recovery Action").

1.16 "Chapter 11 Trustee Substantive Consolidation Claims" means any right or remedy or the assertion of any right to payment or remedy from Cadent Underwriters, Inc, Cadent Administrators, Inc., BenComp National, Inc. and Community Health Solutions of America, Inc., whether or not such right or remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, arising from, in connection with, or relating in any way to, the matters asserted in the adversary proceeding filed by the Chapter 11 Trustee styled *Larry S. Hyman, Chapter 11 Trustee of the Estate of Community Health Solutions of America, LLC v. Cadent Underwriters, Inc., Cadent Administrators, Inc., BenComp National Corp. and Community Health Solutions of America, Inc.,* adv. proc. no. 8:06-ap-00246-CPM. (the "Consolidation Action").

1.17 "Claim" means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, Contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, Contingent, matured, unmatured, disputed, undisputed, secured or unsecured. The term "Claim" shall be broadly construed herein to include all manner and type of claim, whenever and wherever such claim may arise.

1.18 "Class" means a category of Claims or Interests, as classified in Article 3 of this Plan.

1.19 "Community Health Solutions" means Community Health Solutions of America, LLC.

1.20 "Confirmation" or "Confirmation of this Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

1.21 "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

1.22 "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of this Plan.

1.23 "Confirmation Order" means the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.24 "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.25 "Debtor" means Community Health Solutions, including in its capacity as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

- 4 -

1.26 "Debtor's Lender Related Claims" means any right or the assertion of any right to payment from Mirabilis, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, arising from, in connection with, or relating in any way to, the lending arrangement by Mirabilis to the Debtor.

1.27 "Debtor's Simmons Related Claims" means any right or the assertion of any right to payment from Simmons, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, arising from, in connection with, or relating in any way to actions of Simmons as the founder and an executive of the Debtor, including objections to the Allowance of the Simmons Proof of Claim (as hereinafter defined), the recovery of the note receivable from Tricast, Inc. in the amount of $513,542.00 and equitable subordination of the Simmons Proof of Claim.

1.28 "Disbursing Agent" means Larry S. Hyman, who now serves as the Chapter 11 Trustee, who shall make all distributions as required under this Plan.

1.29 "Disclosure Statement" means the Disclosure Statement With Respect to Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for Community Health Solutions of America, LLC, including all annexes, exhibits and schedules attached thereto or referenced therein (and the exhibits, if any, to such annexes, exhibits and schedules), prepared pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be further amended or modified from time to time.

1.30 "Disputed Claim" means a Claim that has not been allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court or (3) granted in whole or part by a Final Order of the Bankruptcy Court. For purposes of this Plan, a Claim that has not been allowed by a Final Order of the Bankruptcy Court shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, if (A) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (B) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (C) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent or unliquidated, (D) no corresponding Claim has been scheduled in the Schedules or (E) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

1.31 "Distribution Date" when used with respect to an Allowed Claim means the date, as determined by the Disbursing Agent, that is as soon as reasonably practicable after the later of: (a) the Effective Date or (b) the first (1st) Business Day after the date upon which the Claim becomes Allowed.

1.32 "District Court" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.33 "Effective Date" means, and shall occur on, the first (1st) Business Day immediately following the first date upon which all of the conditions to occurrence of the Effective Date contained in Section 11.2 of this Plan have been satisfied or waived by the Plan Proponents provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Plan Proponents unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date shall be the first (1st) Business Day immediately following such date as is thirty (30) calendar days following the expiration or other termination of any stay of effectiveness of the Confirmation Order; and, further provided, that the Effective Date shall not occur until all of the conditions to occurrence of the Effective Date set forth in Section 11.2 of this Plan have been satisfied or waived by the Debtor.

1.34 "Entity" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, an "entity" as defined in Section 101(15) of the Bankruptcy Code.

1.35 "Estate" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

1.36 "Final Order" means an Order, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.37 "Governmental Unit" means any foreign, provincial, federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

1.38 "Interests" means any legal, equitable, contractual or other rights of any Entity (a) with respect to a equity interest in the Debtor represented by membership interests in the Debtor issued by the Debtor and outstanding on the Petition Date, or (b) to acquire or receive the foregoing.

1.39 "Lien" means, with respect to any asset or property of the Debtor, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind affecting such asset or property.

1.40 "Mirabilis" means Mirabilis Ventures, Inc., a Nevada corporation and its successors, divisions, subdivisions, departments, subsidiaries, officers, directors and the agents, servants, employees, representatives and assigns of each of them.

1.41 "Mirabilis Affiliates" means and includes, collectively, Mirabilis, Paymaster, Presidion Solutions, Inc., TenShi Enterprises, Inc. and TenShi Leasing, Inc.

1.42 "Mirabilis Claim" means the Claim of Mirabilis arising prior to the Petition Date against the Debtor reflected in Claim No. 35 in the amount of $1,732,727.56 and (a) deemed Allowed as a Secured Claim in the amount of $1,232,727.56 and (b) deemed Allowed as an Unsecured Claim in the amount of $500,000.00 that will receive no share of the New Capital pursuant to the settlement and compromises incorporated in the Plan.

1.43 "Mutual General Release" means that certain Mutual General Release by and among the Plan Proponents, the Cadent Companies, the Mirabilis Affiliates, Simmons and certain individuals who held or hold equity interests in the Cadent Companies. A true and correct copy of the proposed Mutual General Release is attached as Exhibit "C" to the Disclosure Statement.

1.44 "New Capital" means the amount of new value to be provided to the Debtor for the purpose of funding this Plan by Mirabilis in the amount of One million and 00/100 dollars ($1,000,000.00) in exchange for the New Interests in the Reorganized Debtor.

1.45 "New Interests" means the 1000 new membership interests issued to Mirabilis pursuant to the Plan and in exchange for the new value contributed by Mirabilis. The New Interests shall represent 100% equity ownership interest in the Reorganized Debtor.

1.46 "Order" means an order or judgment of a court.

1.47 "Other Priority Claim" means a Claim against the Debtor entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.48 "Other Secured Claim" means a Secured Claim arising prior to the Petition Date against the Debtor, other than the Mirabilis Secured Claim.

1.49 "Other Unsecured Claim" means any Unsecured Claim arising prior to the Petition Date against the Debtor in an amount greater than $2,500.00. As used in the Plan the term Other Unsecured Claim does not include any Claim of the Mirabilis Affiliates or the Cadent Companies and does not include the Simmons Proof of Claim.

1.50 "Other Unsecured Claims Fund" means that amount of the New Capital that will remain available for distribution by the Disbursing Agent to holders of Allowed Other Unsecured Claims after the Disbursing Agent pays (a) the Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Small Claims, Allowed Other Unsecured Claims that elect to reduce such Allowed Claim to $2,500.00 as provided under the Plan, and the Class 6 Settlement Claim and (b) the expenses necessary for the Disbursing Agent to perform his duties.

1.51 "Party" or "Parties" means the Entity or Entities that execute and deliver the Mutual General Release.

1.52 "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for

profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.53 "Paymaster" means Common Paymaster Corporation, a Florida corporation and its successors, divisions, subdivisions, departments, subsidiaries, officers, directors and the agents, servants, employees, representatives and assigns of each of them.

1.54 "Petition Date" means March 24, 2006.

1.55 "Plan" means this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for Community Health Solutions of America, LLC including any exhibits and other attachments hereto, as it and they may be amended, modified or supplemented from time to time.

1.56 "Prime Rate" means the prime rate of interest as published in the *WALL STREET JOURNAL* on the Effective Date.

1.57 "Priority Tax Claim" means a Claim against the Debtor that is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.58 "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.59 "Pro Rata Share" means the same proportion an Allowed Claim in a particular Class bears to the total amount of Allowed Claims in such Class.

1.60 "Reorganized Debtor" means Community Health Solutions as it exists on or after the Effective Date.

1.61 "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.62 "Secured Claim" means a Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the assets or property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.63 "Simmons" means Gary Simmons, a founder of the Debtor, his heirs, successors, guardians, personal representatives, employees, representatives, and assigns of each of them.

1.64 "Simmons Proof of Claim" means any claim that is related to, is derived from, or is based upon the proofs of claim filed by Simmons in the Bankruptcy Case, Claim No. 25 in the amount of $975,942.32 and Claim No. 30 in the amount of $975,942.32 or the scheduled claim of Tricast, Inc. in the amount of $90,482.62.

1.65   "Small Claim" means an Unsecured Claim arising prior to the Petition Date and that is in an amount no more than $2,500.00.

1.66   "Subordinated Claim" means any claim that is subordinated pursuant to section 510(b) or 510(c) of the Bankruptcy Code, which shall include, without limitation, (a) any Claim arising from the rescission of a purchase or sale of any Interest, (b) any Claim for damages arising from the purchase or sale of an Interest, (c) any Claim for reimbursement, contribution, or indemnification on account of any such Claim, (d) any claim for similar violations of the securities laws, misrepresentations, breaches of fiduciary duties, or any similar claim related to the foregoing, or (e) any Claim for attorneys fees related to any of the foregoing.

1.67   "Supplemental Funding" means the additional funds to be provided by Mirabilis to the Disbursing Agent after the Effective Date that may be necessary to insure that 100% of the Allowed Amount of every Other Unsecured Claim is paid in full no later than the second anniversary of the Effective Date.

1.68   "Supplemental Funding LC" means a letter of credit issued by a financial institution chartered under the laws of the United States or the State of Florida, either a national banking association or a Florida banking corporation, with an office located in Tampa, Florida in favor of the Disbursing Agent to assure the availability of the Supplemental Funding issued on or before the Effective Date.  The form and content of the Supplemental Funding LC, including any ministerial conditions to funding, shall be agreed upon by the Plan Proponents prior to the Confirmation Hearing or, in the absence of such agreement, approved by the Bankruptcy Court at the Confirmation Hearing. The necessity of posting the Supplemental Funding LC and the amount, if deemed necessary, shall also be determined prior to the Confirmation Hearing by agreement of the Plan Proponents or, in the absence of such agreement, approved by the Bankruptcy Court at the Confirmation Hearing.

1.69   "Unsecured Claim" means any Claim that is neither secured (including by right of setoff) nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to, (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the holder's interest in the Estates' interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.  The term does not include Subordinated Claims.

## ARTICLE 2

## AFFILIATE DISPUTE COMPROMISES

2.1   Issues Subject to Compromises.   The Plan proposes, and its terms embody, a series of compromises and settlements of the Affiliate Issues, which all relate to transactions and business dealings between, among or involving the Debtor, the Plan Proponents and one or more of the Cadent Companies. The waiver of Claims of the Mirabilis Affiliates and the Cadent Companies and the payment of the New Capital by Mirabilis is conditioned upon and serves as the primary consideration to be exchanged for the resolution of these issues. There are four areas

of disputes or potential disputes that are completely and finally resolved under the Plan without the necessity for further litigation and expense.

2.2     Resolution of the Chapter 11 Trustee Substantive Consolidation Claims. The Plan Proponents have studied whether the liabilities and properties of the Debtor should be substantively consolidated for purposes of distributions under a plan of reorganization with the liabilities and properties of certain non-Debtor affiliates, specifically, the Cadent Companies. These issues were raised in the Consolidation Action filed by the Chapter 11 Trustee. These issues relate primarily to the following: (a) whether the elements necessary to obtain an order of substantive consolidation are satisfied in the Bankruptcy Case; (b) the value of the Debtor's Estate on an individual and a consolidated basis with the Cadent Companies, and the proper method of determining such value; (c) whether the Estate of the Debtor and assets of the Cadent Companies should be treated separately for purposes of making payments to holders of Claims; (d) whether it is possible to attribute particular Claims asserted in the Bankruptcy Case to the Debtor or the Cadent Companies; (e) the value to be accorded to guarantees issued by the Debtor in favor of the Cadent Companies; (f) the strength of the relative rights and positions of the different holders of Claims and the creditors of the Cadent Companies with respect to disputes over substantive consolidation; (g) other issues having to do with the rights of the Estate, Claims, or Classes of Claims vis-à-vis the Cadent Companies who are not debtors and may have totally different estates, claims, or classes of claims if subjected to a bankruptcy case; (h) the amount and priority of Claims asserted by or against the Debtor and the Cadent Companies and the potential voidability of certain transfers; and (i) the treatment of equity interests in the Cadent Companies. On the Effective Date, the Chapter 11 Trustee will dismiss the Consolidation Action with prejudice and all Chapter 11 Trustee Substantive Consolidation Claims will be resolved.

(a)     Effect of Compromise and Settlement of Consolidation Action. As a result of the compromise and settlement of the Consolidation Action, (1) no separate Chapter 11 case shall be initiated for any of the Cadent Companies and there shall be no consolidation of the Cadent Companies into the case of the Debtor; (2) the property of the Estate shall not be deemed to be property of any of the Cadent Companies and property of any Cadent Company shall not be deemed to be property of the Estate; (3) claims against any Cadent Company shall not be deemed to be Claims against the Estate; (4) any Proof of Claim filed against the Debtor shall be deemed to be a single claim filed against the Debtor, and all other Proofs of Claim for the same claim filed against the Debtor based upon alleged liability of one or more of the Cadent Companies shall be deemed expunged; (5) except as otherwise provided in the Plan, no distributions under the Plan shall be made on account of Claims made by the Cadent Companies; and (6) all Claims based upon pre-petition unsecured guarantees by the Debtor in favor of any Cadent Company (other than guarantees existing under assumed executory contracts or unexpired leases) or other basis of co-Debtor liability shall be eliminated, and no separate distributions under the Plan shall be made on account of Claims based upon such guarantees or other basis of co-Debtor liability.

The Plan shall not result in the merger or otherwise affect the separate legal existence of the Debtor and the Cadent Companies, other than with respect to distribution rights under the Plan. The Plan shall not (a) impair the validity or enforceability of guarantees that exist under or with respect to assumed executory contracts or unexpired leases as specifically set forth in the Plan; (b) affect valid, enforceable, and unavoidable Liens that would not otherwise be terminated under the Plan, except for Liens that secure a Claim that is eliminated by virtue of the Plan and

Liens against collateral that are extinguished by virtue of such Plan; or (c) have the effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of such structure.

With the exception of the Mirabilis Claim, all Claims by any of the Mirabilis Affiliates or the Cadent Companies or the entitlement to payment of any Administrative Expense of any of the Mirabilis Affiliates or the Cadent Companies shall be disallowed. Specifically, the Mirabilis Affiliates and the Cadent Companies shall waive or withdraw any Claim they may have for monies or services provided to the Debtor after the Petition Date. The Mirabilis Affiliates and the Cadent Companies shall not receive any distribution from the Disbursing Agent of the New Capital.

2.3 <u>Resolution of the Chapter 11 Trustee Recovery Claims.</u> The Plan Proponents have agreed to amicably resolve their disputes with respect to the Recovery Action filed by the Chapter 11 Trustee seeking, among other things, recovery of alleged transfers of the Debtor's property to Mirabilis and Paymaster. On the Effective Date, the Chapter 11 Trustee will dismiss the Recovery Action with prejudice and all Chapter 11 Trustee Recovery Claims will be resolved. Moreover, no new adversary proceedings will be initiated by the Chapter 11 Trustee.

(a) <u>Effect of Compromise and Settlement of Recovery Action.</u> As a result of the compromise and settlement of the Recovery Action, (1) in lieu of the uncertain recovery from Mirabilis and/or Paymaster, who dispute any liability to the Chapter 11 Trustee, the Estate will receive the New Capital for the benefit of holders of Allowed Claims and the Mirabilis Affiliates and the Cadent Companies will waive any right to share in the distribution of the New Capital; (2) Mirabilis and Paymaster will be forever released and discharged from any and all past, pending, present, future, legal, equitable, fixed, contingent, matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable, known, suspected, unsuspected, disclosed, undisclosed, hidden or concealed claims, allegations, demands, obligations, suits, actions, causes of action, proceedings, rights, damages, and costs of any nature whatsoever (regardless of when such claims, allegations, demands, obligations, suits, actions, causes of action, proceedings, rights, damages, and costs of any nature whatsoever accrue or accrued) arising out of, on, in connection with, or in any way relating to the Chapter 11 Trustee Recovery Claims; and (3) the Chapter 11 Trustee will be forever released and discharged from any and all past, pending, present, future, legal, equitable, fixed, contingent, matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable, known, suspected, unsuspected, disclosed, undisclosed, hidden or concealed claims, allegations, demands, obligations, suits, actions, causes of action, proceedings, rights, damages, and costs of any nature whatsoever (regardless of when such claims, allegations, demands, obligations, suits, actions, causes of action, proceedings, rights, damages, and costs of any nature whatsoever accrue or accrued) arising out of, on, in connection with, or in any way relating to the Chapter 11 Trustee Recovery Claims.

2.4 <u>Resolution of Debtor's Lender Related Claims.</u> The Chapter 11 Trustee and other parties in interest in the Bankruptcy Case have asserted from time to time that there is or should be a dispute with Mirabilis with respect to certain transactions in 2005 related to (a) the purchase of member interests of the Debtor from Simmons, (b) the exercise of control over the business operations of the Debtor, (c) the extensions of credit to the Debtor and the agreements to provide credit to the Debtor, and (d) the declaration of a default under a line of credit agreement. These

transactions are more fully described in the Disclosure Statement. On the Effective Date, the Debtor's Lender Related Claims will be released and the Mirabilis Secured Claim will be deemed Allowed and treated as provided in the Plan.

2.5     Resolution of Debtor's Simmons Related Claims. The Plan Proponents and other parties in interest in the Bankruptcy Case have investigated the pursuit of significant claims against Simmons, the founder of the Debtor, with respect to (a) the business operations and financial transactions of the Debtor prior to February 2006, (b) the representations and presentation of the financial status of the Debtor to Mirabilis to induce Mirabilis to enter into the transactions in 2005 related to (1) the purchase of member interests of the Debtor from Gary Simmons, and (2) the extensions of credit to the Debtor and the agreements to provide credit to the Debtor, (c) the amount of the Simmons Proof of Claim, and (d) the equitable subordination of the Simmons Proof of Claim. These issues are more fully described in the Disclosure Statement. On the Effective Date, the Debtor's Simmons Related Claims will be released and the Simmons Proof of Claim will be deemed Allowed as a Class 6 Settlement Claim in the amount of $525,000.00 and treated as a Class 6 Settlement Claim as provided in the Plan. Additionally, the Reorganized Debtor will grant an irrevocable, non-exclusive license to Simmons of the current software used by BenComp National, Inc., and more specifically described as that certain software developed jointly by BenComp National, the Debtor and Cadent, in a form acceptable to Simmons (the "License"). Moreover, without further consideration, Simmons will effect the surrender to Mirabilis of the issued and outstanding shares of the common stock of Cadent Underwriters, Inc. held by Simmons, Graeme Smith, Peter Farrell, Mark Simmons and Kendra Hubbard.

2.6     Rule 408 Restrictions. Except as expressly provided in this Plan, no document or communication exchanged by the Plan Proponents in the negotiation or furtherance of the settlements in the Plan, and no act by the Plan Proponents in connection with the negotiation, execution or implementation of the settlements, shall be construed as an admission or concession by the Plan Proponents, including without limitation any admission or concession by the Plan Proponents regarding the existence or non-existence of liability for the Affiliate Issues or any other Claim. No party in interest in the Bankruptcy Case nor its attorneys or agents may invoke, refer to, rely upon, or use the terms of this settlement, or any aspect of the negotiation, execution, or implementation of the settlement, in any litigation, proceeding or forum of any kind or nature whatsoever for the purpose of attempting to establish or prove the acceptance or rejection by the Plan Proponents of any particular interpretation of any statute, regulation or transaction with respect to any claim. The Plan Proponents are entering into the settlements solely for the purposes of compromising and resolving certain disputes between them respecting the Affiliate Issues in order to avoid further litigation with respect thereto, on the mutual understanding that the substance of the settlement and any related negotiations or acts of implementation fall within the provisions of Rule 408 of the Federal Rules of Evidence and any similar evidentiary rule or principle that precludes the introduction of evidence regarding settlement negotiations and agreements.

2.7     Approval of Compromises and Settlements. The Plan is deemed to be a motion under Sections 105, 363 and 1123 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules for approval of the compromise and settlement of the issues described in Sections 2.2, 2.3, 2.4 and 2.5. The Confirmation of this Plan shall constitute approval of the motion by the

Bankruptcy Court, and the Confirmation Order shall contain findings supporting and conclusions approving the compromises and settlements as fair and equitable and within the bounds of reasonableness.

**ARTICLE 3**

**TREATMENT OF ADMINISTRATIVE CLAIMS
AND PRIORITY TAX CLAIMS**

3.1     Administrative Claims.  Each holder of an Allowed Administrative Claim (except any such holder that agrees to different treatment) shall receive the Allowed Amount of such holder's Allowed Administrative Claim, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Effective Date or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Claims representing (a) post-petition liabilities incurred in the ordinary course of business by the Debtor and (b) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid by the Chapter 11 Trustee in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

3.2     Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim (except any such holder that agrees to different treatment) shall receive the Allowed Amount of such holder's Allowed Priority Tax Claim, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Effective Date or as soon thereafter as is practicable, except to the extent that the holder of a Priority Tax Claim agrees to a different treatment; provided however, at the Plan Proponents' option, the Debtor may pay Priority Tax Claims plus interest accrued thereon over a period not exceeding six (6) years after the date of the assessment of such Claims as provided in Section 1129(a)(9)(C) of the Bankruptcy Code.  Furthermore, the obligations under Section 3.2 of the Plan in respect of any Allowed Priority Tax Claim that is secured by a valid, perfected and enforceable Lien shall be collateralized by a continuation of the Lien underlying such Claim and such obligation shall be and become due and payable upon the sale or other disposition of the collateral therefore.

**ARTICLE 4**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

4.1     Classification of Claims and Interests.

(a)     General.  Section 4.2 of the Plan sets forth the designation of Classes of Claims and Interests.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.

(b)     Unclassified Claims.  In accordance with Section 1123(a)(1) of the Bankruptcy Code all Administrative Claims and Priority Tax Claims of the Debtor have not been classified and are excluded from the Classes established in Section 4.2 of the Plan.  The

treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article 3 of the Plan.

4.2 Classes. For the purposes of the Plan, the Claims against, or Interests in, the Debtor are grouped in the following Classes in accordance with Section 1122(a) of the Bankruptcy Code:

(a) Class 1 – Other Priority Claims. Class 1 consists of all Other Priority Claims.

(b) Class 2 - Small Claims. Class 2 consists of all Small Claims.

(c) Class 3 – Claim of Mirabilis. Class 3 consists of the Mirabilis Claim.

(d) Class 4 - Other Secured Claims. Class 4 consists of separate sub-classes for each Other Secured Claim against the Debtor. Each sub-class is deemed to be a separate class for all purposes under the Bankruptcy Code, including voting.

(e) Class 5 – Other Unsecured Claims. Class 5 consists of all Other Unsecured Claims.

(f) Class 6 - Settlement Claim. Class 6 consists of the Simmons Proof of Claim.

(g) Class 7 - Subordinated Claims. Class 7 consists of Subordinated Claims.

(h) Class 8 – Interests in Community Health Solutions. Class 8 consists of all interests in the Debtor.

## ARTICLE 5

### IDENTIFICATION OF CLAIMS AND INTERESTS
### IMPAIRED AND NOT IMPAIRED BY THE PLAN

5.1 Classes of Claims Not Impaired by the Plan. The Administrative Claims, Priority Tax Claims, Other Priority Claims and Small Claims are not impaired by the Plan. Under Section 1126(f) of the Bankruptcy Code, the holders of those Claims are presumed conclusively to have voted to accept the Plan, and therefore, the votes of those holders shall not be solicited.

5.2 Classes of Claims Impaired by the Plan. Classes 3, 4, 5 and 6 are impaired by the Plan. The holders of Claims in such Classes are entitled to vote to accept or reject the Plan.

5.3 Classes of Interests Impaired by the Plan and Deemed to Have Rejected the Plan. Classes 7 and 8 are impaired by the Plan and the holders of such Subordinated Claims and Interests are not entitled to receive or retain any property under this Plan on account of such Subordinated Claims and Interests. Under Section 1126(g) of the Bankruptcy Code, the holders of such Subordinated Claims and Interests are deemed to have rejected this Plan, and therefore, the votes of such holders shall not be solicited.

# ARTICLE 6

## TREATMENT OF ALLOWED CLAIMS AND ALLOWED INTERESTS

6.1    General.  The Allowed Claims and Allowed Interests, as classified in Article 4 of the Plan, shall be satisfied in the manner set forth in Article 6 of the Plan.  The treatment of, and the consideration to be received by, holders of Allowed Claims pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims.

6.2    Unimpaired Classes of Claims.  The following constitutes the treatment under the Plan of the Allowed Unimpaired Classes of Claims:

(a)    Class 1 – Other Priority Claims.  On the Distribution Date or such other date on which an Allowed Other Priority Claim becomes payable pursuant to any agreement between the Plan Proponents and the holder of such Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, either (i) Cash equal to the unpaid portion of such Allowed Other Priority Claim or (ii) such different treatment (on terms no more favorable to the holder than previously agreed to among the parties) as to which the Plan Proponents and such holder shall have agreed in writing.

(b)    Class 2 – Small Claims.  Each holder of an Allowed Small Claim shall receive on the Distribution Date, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, Cash in an amount equal to 100% of the Allowed amount of such holder's Claim.

6.3    Impaired/Voting Classes of Claims.  The following constitutes the treatment under the Plan of the Allowed Impaired and Voting Classes of Claims:

(a)    Class 3 – Claim of Mirabilis.  Mirabilis shall receive for its Allowed Secured Claim (i) such treatment as shall have been agreed to by Mirabilis and the Reorganized Debtor or (ii) an Allowed Secured Claim paid in accordance with the following terms:

| | |
|---|---|
| Allowed Amount: | $1,232,727.56 as of the Effective Date. |
| Interest Rate: | Prime Rate. |
| Maturity Date: | Five (5) years after the Effective Date. |
| Payment Terms: | Mirabilis shall receive monthly payments of interest only for the first twelve (12) months. Beginning in the thirteenth (13) month and continuing until the fifty-ninth (59) month, Mirabilis shall receive monthly payments of principal and interest based upon a 20-year amortization of its Allowed Secured Claim and payable on the first day of each month |

|                    | commencing in the thirteenth (13) month following the Effective Date. All remaining principal and accrued interest is due and payable on the Maturity Date. |
|--------------------|---|
| Collateral:        | Mirabilis shall retain it first liens against the collateral securing its Allowed Secured Claim to the same extent, validity and priority that such Claim had prior to the Petition Date or to the extent necessary or deemed appropriate by Mirabilis the Reorganized Debtor shall grant to Mirabilis a first priority lien against the intended collateral. |
| Events of Default: | If the Reorganized Debtor fails to make any payment to Mirabilis as required hereunder within 10 days of such payment becoming due, the Reorganized Debtor shall be in default. Upon such default, Mirabilis shall be entitled to send written notice to the Reorganized Debtor of the default, and if the default is not cured within five (5) business days from the date of the notice, Mirabilis shall be entitled to enforce all rights and remedies it possesses against the Collateral without the need of further relief from the Bankruptcy Court. |

Mirabilis shall receive for its Allowed Unsecured Claim (i) such treatment as shall have been agreed to by Mirabilis and the Reorganized Debtor or (ii) an Allowed Unsecured Claim paid in accordance with the following terms:

|                |   |
|----------------|---|
| Allowed Amount: | $500,000.00 as of the Effective Date. |
| Interest Rate: | Prime Rate. |
| Maturity Date: | Five (5) years after the Effective Date. |
| Payment Terms: | Mirabilis shall receive monthly payments of interest only for the first twelve (12) months. Beginning in the thirteenth (13) month and continuing until the fifty-ninth (59) month, Mirabilis shall receive monthly payments of principal and interest based upon a 20-year amortization of its Allowed Unsecured Claim and payable on the first day of each |

| | month commencing in the thirteenth (13) month following the Effective Date. All remaining principal and accrued interest is due and payable on the Maturity Date. |
|---|---|
| Collateral: | None. |
| Events of Default: | If the Reorganized Debtor fails to make any payment to Mirabilis as required hereunder within 10 days of such payment becoming due, the Reorganized Debtor shall be in default. Upon such default, Mirabilis shall be entitled to send written notice to the Reorganized Debtor of the default, and if the default is not cured within five (5) business days from the date of the notice, Mirabilis shall be entitled to enforce all rights and remedies it possesses without the need of further relief from the Bankruptcy Court. |

(b)     Class 4 – Other Secured Claims.  On the Effective Date, as shall have been determined by the Plan Proponents in their sole discretion, either (i) the legal, equitable, and contractual rights of each holder of an Allowed Other Secured Claim shall be left unaltered in accordance with the provisions of Section 1124(2) of the Bankruptcy Code, *provided, however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date; (ii) each holder of an Allowed Other Secured Claim shall (A) retain the Liens securing such Allowed Other Secured Claim and (B) receive deferred Cash payments totaling at least the amount of such Allowed Other Secured Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the Estate's interest in such property; (iii) the collateral securing such Allowed Other Secured Claim shall be surrendered to the holder of such Allowed Other Secured Claim; or (iv) each holder of an Allowed Other Secured Claim shall be paid in full on the Effective Date.  The failure to object to any Other Secured Claim in the Bankruptcy Case shall be without prejudice to the Reorganized Debtor's right to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Other Secured Claim.

Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of the Debtor held with respect to an Other Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Allowed Claim is paid in full, at which time such Liens shall be released, shall be deemed null and void, and shall be unenforceable for all

purposes; *provided*, *however*, that the Reorganized Debtor may condition delivery of any final payment upon receipt of an executed release of Liens. Nothing in Section 6.3(b) or elsewhere in the Plan shall preclude the Reorganized Debtor from challenging the validity of any alleged Lien on any asset of the Debtor or the value of the property that secures any alleged Lien.

        (c)     Class 5 - Other Unsecured Claims. In compromise and settlement of the Affiliate Issues, each holder of an Allowed Other Unsecured Claim shall receive on the Distribution Date, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either:

        (1)     A Pro Rata Share (allocated among all holders of Allowed Other Unsecured Claims) of the Other Unsecured Claims Fund.

        (2)     In the alternative, if the holder of an Allowed Other Unsecured Claim elects to reduce the amount of such Allowed Claim to $2,500.00 by timely return of a completed Claim Reduction Form in accordance with the instructions thereon, on the Distribution Date, Cash in an amount equal to 100% of the Allowed amount of such holder's Claim.

In the event the Pro Rata Share (allocated among all holders of Allowed Other Unsecured Claims) of the Other Unsecured Claims Fund is less than 100%, Mirabilis shall provide the Supplemental Funding to the Disbursing Agent in an amount sufficient to insure that 100% of the Allowed Amount of every Other Unsecured Claim is paid in full no later than the second anniversary of the Effective Date. The Supplemental Funding LC or a deposit of cash, or cash equivalent, will be delivered on or before the Effective Date to secure payment of the Supplemental Funding. Any deferred payment to the holder of an Allowed Other Unsecured Claim shall include interest from the initial Distribution Date as to such Claim until payment at the Prime Rate.

        (d)     Class 6 - Settlement Claim. The holder of the Class 6 Settlement Claim shall receive on the Distribution Date, in full satisfaction, release and discharge of and in exchange for such Allowed Claim, Cash in the amount of $525,000.00. Simmons, as the holder of the Class 6 Settlement Claim, has accepted the terms and conditions of this special treatment as part of the Plan settlement which benefits all parties.

     6.4     Impaired/Non-voting Classes of Claims and Interests. The following constitutes the treatment under the Plan of the Impaired and Non-voting classes of Claims and Interests:

        (a)     Class 7 - Subordinated Claims. The holders of Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims. All Subordinated Claims shall be discharged as of the Effective Date.

        (b)     Class 8 - Interests. All Interests of any kind shall be cancelled, annulled and extinguished as of the Effective Date and the holders thereof shall not receive or retain any property or distribution under the Plan on account of such Interests.

## ARTICLE 7

## MEANS FOR EXECUTION OF PLAN

7.1     Plan Implementation.

(a)     Funding of the Plan.  Mirabilis is funding the Plan with the New Capital and the Supplemental Funding. Upon confirmation of the Plan, Mirabilis will cause the New Capital to be delivered to the Disbursing Agent in exchange for the issuance of the New Interests in the Reorganized Debtor.  The Disbursing Agent will distribute the New Capital and any Supplemental Funding to the holders of Allowed Claims in accordance with the terms of the Plan.

(b)     Confirmation Deposit.  Mirabilis has delivered the New Capital to a trust account of Bush Ross, P.A. to serve as a deposit of the consideration required by the Plan prior to entry of the Confirmation Order. Once the Bankruptcy Court has entered an order conditionally approving the Disbursure Statement and the Mutual General Release has been executed and is being held pending Confirmation of this Plan, the deposit shall be deemed a deposit under Bankruptcy Rule 3020(a) for the exclusive purpose of making distributions under the Plan. If for any reason the Bankruptcy Court does not conditionally approve the Disclosure Statement or the Mutual General Release is not executed or the Confirmation Order is not entered and does not become a Final Order on or before October 31, 2006, the deposit will be returned to Mirabilis without further action upon request of Mirabilis.

(c)     Name and Management of the Reorganized Debtor.   The Reorganized Debtor will retain the Debtor's name and will proceed in its business operations under the management and control of Mirabilis following confirmation of the Plan. The managing partner of the Debtor will be Robert W. Konicki.   Mr. Konicki was employed and compensated by Mirabilis to operate the Debtor  and has continued in that capacity under the Chapter 11 Trustee.

7.2     Provisions Concerning Plan Distributions.

(a)     Disbursing Agent.   Larry S. Hyman, the Chapter 11 Trustee in the Bankruptcy Case, shall act as the Disbursing Agent and, except as otherwise provided, shall make all distributions required under this Plan. The Disbursing Agent shall have the authority to engage professionals necessary to perform his duties.  Payment of the Disbursing Agent's and his professionals' fees and costs shall be made from the New Capital

(b)     Date of Distributions.   Distributions shall be made on the Distribution Date, unless otherwise provided herein or as ordered by the Bankruptcy Court.

7.3     Transactions on Business Days.  If the Effective Date, or any other date on which a transaction may occur under this Plan, shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall occur instead on the next succeeding Business Day.

7.4     Disputed Claims.

(a)     Objection Deadline.  As soon as practicable, but in no event later than ninety (90) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders thereof and the United States Trustee for the Middle District of Florida.

(b)     Prosecution of Objections.  On and after the Effective Date, only the Reorganized Debtor and the Disbursing Agent shall, jointly, have authority to file objections, litigate to judgment, settle or withdraw objections to Disputed Claims.

7.5     Withholding of Taxes.  The Disbursing Agent shall withhold from any assets and property distributed under this Plan any assets or property which must be withheld for foreign, federal, state or local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law and shall perform such services as are necessary in connection with the same.

7.6     Claims Entitled to a Distribution of Less than Ten Dollars.  The Disbursing Agent shall not distribute dividends paid under this Plan to holders of Allowed Unsecured Claims in the amount of $10.00 or less.

7.7     Unclaimed Property.  Any Cash, assets or other property to be distributed under this Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto as of the later of (a) one (1) year after the Confirmation Date or (b) one hundred twenty (120) calendar days after the distribution, shall become vested in, and shall be transferred and delivered to, the Reorganized Debtor.  In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under this Plan with respect to such Claim.

7.8     Non-Negotiated Checks.  If a holder of an Allowed Claim fails to negotiate a check issued to such holder pursuant to this Plan within one (1) year of the date such check was issued, then the amount of Cash attributable to such check shall be deemed to be unclaimed property in respect of such holder's Allowed Claim and shall be transferred and delivered to the Reorganized Debtor.  In such event, such holder's Claim shall no longer be deemed to be Allowed and such holder shall be deemed to have waived its rights to such payments or distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under this Plan with respect to such Claim.

7.9     Form of Payments.  Except where this Plan contemplates deferred payment or delivery of property or securities, payments to be made by the Disbursing Agent or the Reorganized Debtor pursuant to this Plan shall be made in Cash or by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.10    Further Authorizations.  The Reorganized Debtor or the Disbursing Agent, if and to the extent necessary, shall seek such Orders, judgments, injunctions and rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, this Plan.

7.11    Transfer Taxes.  The issuance, transfer or exchange of any securities issued under, or the transfer of any other assets or property pursuant to, this Plan, or the making or delivery of an instrument of transfer under this Plan, shall not (and the Confirmation Order shall so order), pursuant to Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax or other similar tax.

7.12    Recordable Order.  The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

7.13    Corporate Action.  Upon the Effective Date, all matters provided for under the Plan involving actions relating to the ownership and management of the Reorganized Debtor shall be deemed to be authorized and approved without any requirement of further action by the Debtor, the members of the Debtor, or the manager of the Debtor.

7.14    Effectuating Documents and Further Transactions.  The Reorganized Debtor or the Disbursing Agent shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.15    Extinguishment of Debtor's Guarantees.  Except as specifically provided in the Plan, on the Effective Date, and in accordance with the terms of this Plan, all guarantees of collection, payment or performance made by the Debtor shall be discharged, released, extinguished and of no further force or effect.

7.16    Revesting.  Except as otherwise expressly provided in the Plan, on the Effective Date, the Reorganized Debtor shall be vested with all of the assets and property of the Debtor's former Estate, free and clear of all Claims, Liens, charges and other interests of holders of Claims or Interests and may each operate its business free of any restriction imposed by the Bankruptcy Code or by the Bankruptcy Court.

7.17    Duties of Chapter 11 Trustee and Counsel Post-Confirmation.  The Chapter 11 Trustee and his counsel shall be discharged from any obligation or responsibility to or for the benefit of the Estate on the Effective Date.

7.18    Maximum Distributions for Unsecured Claims.  Notwithstanding the provisions of the Plan, no holder of a Claim shall receive a recovery that exceeds 100% of such holder's Allowed Claim amount because the New Capital exceeded the amount of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Small Claims, Allowed Other Unsecured Claims and the Allowed Settlement Claim as determined on the Distribution Date and the amount attributable to such excess recovery shall be

withheld from such holder and shall be distributed to the Reorganized Debtor as additional working capital.

7.19    Reservation of Rights Regarding Claims. Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

7.20    Reservation of United States Trustee and Chapter 11 Trustee Duties and Responsibilities. Nothing in this Plan (including, without limitation, the releases and promises relating to settlement negotiations and agreements) is intended, and nothing herein shall be construed, to inhibit or impair the Office of the United States Trustee or the Chapter 11 Trustee in the performance of their statutory duties; *provided*, *however*, that this Plan is intended to finally and completely resolve all civil issues and disputes in the Bankruptcy Case.

## ARTICLE 8

## EFFECTS OF PLAN CONFIRMATION

8.1    Injunctions, Releases and Discharges.

(a)    Discharge and Release. Except as specifically provided in the Plan or in the Confirmation Order, effective on the Effective Date, Confirmation shall (a) discharge the Debtor from any and all Claims including any Claim of a kind specified in Sections 502(g), 502(h), 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based on such Claim was filed or deemed filed under Section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtor, (ii) such Claim is or was Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has voted on or accepted the Plan and (b) terminate all rights and interests of holders of Interests in respect of the Debtor. Except as specifically provided in the Plan to the contrary, the rights that are provided in the Plan shall be in complete settlement, satisfaction, release and discharge of and shall void and extinguish all Claims against, Liens on and Interests in the Debtor or the assets and properties of the Debtor.

(b)    Discharge Injunction. Except as specifically provided in the Plan to the contrary, the satisfaction, release and discharge set forth in subpart (a) of Article 8.1 of the Plan shall also operate as an injunction prohibiting and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from any offset (a) any Claim against or Interest in the Debtor, by any Entity and (b) any cause of action, whether known or unknown, against Mirabilis based on the same subject matter as any Claim or Interest described in subpart (a) of Section 8.1 of the Plan.

8.2    Terms of Injunctions and the Automatic Stay. Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, the injunction described in Section 8.1 of the Plan shall remain in full force and effect following the Effective Date. All other injunctions or automatic stays provided for in the Bankruptcy Case pursuant to Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

8.3     No Liability for Tax Claims.  Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefore, no Claim of such authority shall be Allowed against the Debtor or the Reorganized Debtor for taxes, penalties or interest arising out of the failure, if any, of the Debtor to have filed any tax return, including, but not limited to, any income tax return or franchise tax return in any prior year or arising out of an audit of any return for a period before the Petition Date. The Plan Proponents have investigated the facts and circumstances of the Debtor, and are not aware of any tax obligation is outstanding to any taxing authority at this time, except in the ordinary course of operation of the Debtor's business.

8.4     Disallowed Claims and Disallowed Interests.  On and after the Effective Date, the Debtor shall be fully and finally discharged of any liability or obligation on a disallowed Claim or a disallowed Interest, and any Order creating a disallowed Claim or a disallowed Interest that is not a Final Order as of the Effective Date solely because of a Person's or Governmental Unit's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided in the Plan, shall constitute an Order: (a) disallowing all Claims and Interests to the extent such Claims and Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest; and (b) disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages.

8.5     Retention and Enforcement of Causes of Action. Except as set forth in the Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor retains and has the exclusive right to enforce against any Person or Governmental Unit any and all Causes of Action and rights of the Debtor that arose both before and after the Petition Date, including, but not limited to, the rights and powers of a trustee and debtor in possession and all Causes of Action granted pursuant to and still existing under Sections 502, 544, 545, 548, 549, 550, 551 and 553 of the Bankruptcy Code.  In addition, the Reorganized Debtor may bring other Causes of Action or obtain tolling agreements with entities against which known Causes of Action exist. All creditors and interested parties shall be advised that there may be Causes of Action that the Reorganized Debtor may bring where facts have been concealed or were not otherwise fully known at the time of the confirmation of the Plan.  Accordingly, no party shall be entitled to rely on the doctrine of res judicata under the Confirmation Order to assert that no claims can be brought. Provided, however, it is expressly understood that consistent with the intent of the Plan Proponents that Allowed Other Unsecured Claims be paid in full, no action to avoid a transfer as preferential under Section 547 of the Bankruptcy Code shall be filed.

## ARTICLE 9

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     Rejection of Executory Contracts and Unexpired Leases.  Any unexpired lease or executory contract that has not been expressly assumed with the Bankruptcy Court's approval on or prior to the Confirmation Hearing (either through the Plan or otherwise) shall, as of the Confirmation Hearing and subject to the occurrence of the Effective Date, be deemed to have

been rejected unless there is pending before the Bankruptcy Court on the Confirmation Date a motion by the Debtor to assume such executory contract or unexpired lease.

9.2     Assumption of Executory Contracts and Unexpired Leases.    Notwithstanding Article 9.1, the Debtor shall assume those executory contracts and unexpired leases listed in Exhibit 1 hereto (as such list may be amended or supplemented up to and including the Confirmation Hearing), and the Debtor shall assume any unexpired or executory contract of the Chapter 11 Trustee entered into to the extent such contract or lease is executory or unexpired, respectively, under Section 365 of the Bankruptcy Code.

9.3     Cure.    Any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code (a) by payment of the default amount in Cash on the Effective Date or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease and the Debtor. In the event of a dispute regarding (i) the amount of any cure payments, (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving assumption.

9.4     Damages Upon Rejection.    The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person files a Proof of Claim with the Bankruptcy Court before thirty (30) calendar days following the Confirmation Date or such other deadline established by the Bankruptcy Court.  To the extent any such Claim is Allowed by a Final Order of the Bankruptcy Court, such Claim shall become, and shall be treated for all purposes under the Plan as, an Allowed Unsecured Claim and the holder thereof shall receive distributions as a holder of an Allowed Claim in such Class pursuant to the Plan. The Plan shall constitute notice to Persons that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtor shall have no obligation to notify such Persons and  that the Confirmation Date has occurred.

## ARTICLE 10

## EFFECTUATION AND SUPERVISION OF THE PLAN

10.1     Jurisdiction.    Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of this Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order.  Except as otherwise provided in this Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Estate.  Nothing contained herein shall prevent the Disbursing Agent from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor has, may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of this Plan and shall not be affected thereby except as specifically provided herein.

10.2    General Retention.  Following Confirmation of this Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim.  The failure by the Chapter 11 Trustee or the Disbursing Agent to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the right to object to or re-examine such Claim, in whole or in part.

10.3    Specific Purposes.  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

(a)    to modify this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)    to correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan, including the adjustment of the dates of performance under this Plan and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan and such other documents may be substantially realized thereby;

(c)    to assure the performance by the Disbursing Agent of his or her obligations under this Plan;

(d)    to enforce and interpret the terms and conditions of this Plan;

(e)    to enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights and powers of the Debtor and/or the Disbursing Agent;

(f)    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor or its Estate arising prior to the Effective Date or relating to the period of administration of the Bankruptcy Case;

(g)    to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code;

(h)    to hear and determine any causes of action over which the Bankruptcy Court has jurisdiction arising during the period from the Petition Date through the Effective Date, or in any way related to this Plan or the transactions contemplated hereby, against the Debtor, or the Debtor's attorneys, financial advisors, representatives and agents;

(i)    to determine any and all motions pending on Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(j)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)     to consider and act on the compromise and settlement of any Claim against or the assertion of any Interest in the Debtor or its Estate;

(l)     to determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(m)     to enter such Orders as are necessary to implement and enforce the injunctions described in Section 8.1 herein;

(n)     to enter such Orders as are necessary to implement and enforce any other Orders entered in the Bankruptcy Case; and

(o)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

(p)     to hear and determine all questions and disputes regarding the Management Services Agreement.

10.4     Governing Documents.   The Debtor's Operating Agreement and Articles of Organization and/or other governing documents shall be amended as necessary to comport with the terms of the Plan.

## ARTICLE 11

### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

11.1     Conditions to Confirmation.   Confirmation of this Plan shall not occur unless each of the following conditions has been satisfied or has been waived by the Plan Proponents.  These confirmation conditions are as follows:

(a)     Disclosure Statement.   The Bankruptcy Court shall have approved the Disclosure Statement in a Final Order.

(b)     Confirmation Order.   The Bankruptcy Court shall have made such findings and determinations regarding this Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Plan Proponents.

11.2     Conditions to Effectiveness.   Notwithstanding any other provision of this Plan or the Confirmation Order, the Effective Date of this Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Plan Proponents:

(a)     Final Confirmation Order.   The Confirmation Order (and such related Orders) shall have become a Final Order.

(b)     <u>Company Documents</u>. All company documents necessary or appropriate to the implementation of this Plan, if any, shall have been executed, delivered and, where applicable, filed with the appropriate governmental authorities.

(c)     <u>United States Trustee's Fees</u>. The fees of the United States Trustee for the Middle District of Florida then owing by the Debtor shall have been paid in full.

(d)     <u>Execution and Delivery of Mutual General Release.</u> The Mutual General Release shall have been executed and delivered to each of the Parties to the Mutual General Release.

11.3     <u>Waiver</u>. Notwithstanding any other provision of this Plan or the Confirmation Order, this Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Plan Proponents.

## ARTICLE 12

## ACCEPTANCE OR REJECTION OF PLAN

12.1     <u>Each Impaired Class Entitled to Vote Separately</u>. Each impaired Class of Claims shall be entitled to vote separately to accept or reject this Plan.

12.2     <u>Class Acceptance Requirement</u>. Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

12.3     <u>Cramdown</u>. If any impaired Class of Claims fails to accept this Plan by the requisite majority, the Plan Proponents reserve the right to request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that this Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting impaired Class and provides to the holders of Claims in each impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any holder of a Claim or Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Interest.

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1     <u>Revocation of Plan</u>. The Plan Proponents reserve the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Plan Proponents revoke or withdraw this Plan, or if Confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or such Person in any further proceedings involving the Debtor.

13.2     Headings. Headings are utilized in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

13.3     Due Authorization by Holders of Claims. Each and every holder of a Claim who elects to participate in the distributions provided for herein warrants that such holder is authorized to accept, in consideration of such holder's Claim against the Debtor, the distributions provided for in this Plan and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such holder under this Plan.

13.4     Payment on Distribution Dates. Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall, instead, be made, without interest, on the next Business Day thereafter.

13.5     Entire Agreement. This Plan, including any exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents. No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

13.6     Administrative Claims Bar Date. Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order shall operate to set a bar date for Administrative Claims, which bar date shall be thirty (30) calendar days after the Effective Date. Claimants holding Administrative Claims against the Debtor not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth such date and constitute notice of the Administrative Claims bar date. The Disbursing Agent and any other party-in-interest shall have sixty (60) days after the Administrative Claims bar date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court.

13.7     Confirmation Order. In addition to the requirements set forth in this Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of this Plan effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

13.8     Governing Law. Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

13.9     Severability. Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in this Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all holders of Claims or as to the holder of such Claim as to which the provision is illegal, respectively. Such a determination of

unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

13.10  Time.  In computing any period of time prescribed or allowed by this Plan, the day of the act, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than eight (8) days, intermediate days that are not Business Days shall be excluded in the computation.

13.11  No Interest.  Except as expressly stated in this Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date is to be Allowed on any Claim or Interest.

13.12  No Attorneys' Fees.  No attorneys' fees shall be paid with respect to any Claim or Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

13.13  Addresses for Distributions to Holders of Allowed Claims.  Unless otherwise provided in this Plan or a Final Order of the Bankruptcy Court, distributions to be made under this Plan to holders of Allowed Claims shall be made by first class United States mail, postage prepaid, to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such holders, or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules.  The Disbursing Agent shall not be required to make any other effort to locate or ascertain the address of the holder of any Claim.

13.14  Consent to Jurisdiction.  Upon default under this Plan, the Plan Proponents, the Reorganized Debtor and the Disbursing Agent consent to the jurisdiction of the Bankruptcy Court and agree that it shall be the preferred forum for all proceedings relating to such default.

13.15  Setoffs.  Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Disbursing Agent may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such holder.

13.16  Successors and Assigns.  The rights, duties and obligations of any Person or Governmental Unit named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

13.17  Reservation.  If this Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Bankruptcy Case shall be reserved in full.  Furthermore, any concession or admission reflected herein or in the Disclosure Statement is made for purposes of this Plan only, and if this Plan does not become effective, no party in interest in the Bankruptcy Case shall be bound or deemed prejudiced by any such concession or admission.

# ARTICLE 14

## MODIFICATION OF PLAN

14.1 <u>Modification of Plan</u>. The Plan Proponents may propose amendments to, or modifications of, this Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date, the Plan Proponents may remedy any defects or omissions or reconcile any inconsistencies in this Plan or the Confirmation Order or any other Order entered for the purpose of implementing this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan so long as the interests of the holders of Claims and Interests are not materially and adversely affected.

# ARTICLE 15

## NOTICES

15.1 <u>Notices</u>. All notices, requests, elections or demands in connection with this Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested, to:

Community Health Solutions of America, LLC
17755 US HWY 19 N.
Clearwater, Florida 33764
Attention: Robert W. Konecki, President


Mirabilis Ventures, Inc.
c/o Thomas A. Lash, Esq.
Saxon Gilmore Carraway Gibbons Lash & Wilcox, P.A.
201 E. Kennedy Blvd.
Suite 600
Tampa, Florida 33602


Common Paymaster Corporation
c/o Mark J. Bernet, Esq.
Buchanan Ingersoll & Rooney PC
SunTrust Financial Center
401 E. Jackson St.
Suite 2500
Tampa, Florida 33602

And

Jeffrey W. Warren, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, Florida 33601-3913

Larry S. Hyman, Chapter 11 Trustee
106 S. Tampania Drive
Suite 200
Tampa, Florida 33609

John A. Anthony, Esq.
Cheryl Thompson, Esq.
GrayRobinson,P.A.
201 N. Franklin Street, Suite 2200
Post Office Box 3324
Tampa, Florida 33601

Dated: September 18, 2006

Mirabilis Ventures, Inc.

By: _____

Its:    President


Common Paymaster Corporation

By: _____

Its:    President


_____
Chapter 11 Trustee for Community Health
Solutions of America, LLC

# EXHIBIT 1

## EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES ASSUMED BY THE DEBTOR

1.    Contract between the Debtor and South Carolina Solutions, Inc. which expires 9/1/07

2.    Contract between the Debtor and South Carolina Solutions, Inc. which expires 12/31/06

3.    Contract between the Debtor and Capitol Consultants

4.    Contract between the Debtor and GLMR Enterprises, Inc.

5.    Contract between the Debtor and Strategic Health Development Corporation

399476.1