IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

- - - - - - - - - - - - - - - - -x
IN RE:                              :
                                    :
                                    :
COMMUNITY HEALTH SOLUTIONS          :   Case No. 06-01215-8C1
    OF AMERICA                      :          Chapter 11
                    Debtor          :
- - - - - - - - - - - - - - - - -x

                                801 N. Florida Avenue
                                Tampa, Florida
                                October 17, 2006
                                10:10 A.M.


                    **H E A R I N G**

1.  Confirmation Hearing;
2.  Trustee's Application to Employ Michael Moecker &
        Associates, Inc. (Doc. 156);
3.  Application of Chapter 11 Trustee Larry S. Hyman
        for Compensation and Reimbursement of Fees and
        Costs (Doc. 162);
4.  Application for Compensation for John Anthony as
        Trustee's Attorney (Doc. 159);
5.  Application for Payment of Administrative Expense for
        Michael Moecker & Associates for Compensation and
        Reimbursement of Fees and Costs (Doc. 165).




B E F O R E:  THE HONORABLE CATHERINE PEEK McEWEN, Judge


_____

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida  33556
(813) 920-1466

A P P E A R A N C E S:

For Chapter 11
 Trustee Hyman:          CHERYL THOMPSON, Esquire
                         KELLY KELLER, Esquire
                         GrayRobinson, P.A.
                         201 N. Franklin Street, #2200
                         Tampa, Florida  33602
                         (813) 273-5000


For Mirabilis
 and Pacific
 Atlantic
 Capital
 Corporation:           THOMAS LASH, Esquire
                         DAMON ELLIS, Esquire
                         Saxon, Gilmore, et al, P.A.
                         201 E. Kennedy Boulevard #600
                         Tampa, Florida  33602


For Common
PayMaster:               MARK J. BERNET, Esquire
                         Buchanan Ingersoll Professional Corp
                         401 E. Jackson Street, Suite 2500
                         Tampa, Florida  33602
                         (813) 228-8189
                         bernetmj@bipc.com
and
                         JEFF WARREN, Esquire
                         DREW JENKINS, Esquire
                         SHANE RAMSEY, Esquire
                         Bush, Ross
                         401 S. Florida Avenue #200
                         Tampa, Florida  33602


For U.S. Trustee:        DENISE BARNETT, Esquire
                         Office of the U.S. Trustee
                         501 E. Polk Street, #1200
                         Tampa, Florida  33602
                         (813) 228-2000


For Gary Simmons:        GUILLERMO RUIZ, Esquire
                         Attorney at Law
                         2901 Fifth Avenue North
                         St. Petersburg, Florida  33713
                         (727) 321-2728


Also Present:            LARRY HYMAN, Chapter 11 Trustee

**P R O C E E D I N G S**

COURTROOM DEPUTY; Community Health Solutions of America, LLC, Case No. 06-01215.

THE COURT: The Court will take appearances.

MS. THOMPSON: Good morning, Your Honor, Cheryl Thompson for Larry S. Hyman, Chapter 11 Trustee, who is with me in the courtroom. And also Kelly Keller of our office is here. And I apologize, John Anthony hoped to be here, but he's in a hearing in another courtroom.

THE COURT: Okay. Thank you.

MR. RUIZ: Good morning, Your Honor, Guillermo Ruiz for Gary Simmons, who is also present in the courtroom.

MR. WARREN: Good morning, Your Honor. Jeffrey Warren on behalf of Common Paymaster, as co-counsel with Mr. Bernet. And I have with me Drew Jenkins and Shane Ramsey of my office.

MR. RAMSEY: Good morning, Your Honor.

THE COURT: Shane Ramsey?

MR. RAMSEY: Yes, Your Honor.

THE COURT: Okay. And Drew Jenkins. And is Mr. Bernet here?

MR. BERNET: Yes, ma'am.

THE COURT: Oh, there you are. Sorry.

1    Okay.  Who's next?

2                MR. LASH:  Good morning, Your Honor.  Tom

3    Lash on behalf of Mirabilis Ventures, Inc., and Pacific

4    Atlantic Capital Corporation.  My partner, Mr. Ellis,

5    is here today.

6                MR. ELLIS:  Good morning, Your Honor.

7                MR. LASH:  And the paralegal who has worked

8    on this with us, Karen Powers, is also here.

9                THE COURT:  Karen Powers.  Thank you.

10               MS. BARNETT:  Denise Barnett with the U.S.

11   Trustee's Office.

12               MS. RICHARDSON:  And Sarah Richardson for the

13   Pinellas County Tax Collector.

14               THE COURT:  All right.  Thank you.

15   All right.  Anybody here for Michael Moecker and

16   Associates, as counsel?

17               (No response.)

18               THE COURT:  No?  Okay.  And where is

19   Mr. Simmons?

20               MR. RUIZ:  Mr. Simmons is here, Your Honor.

21               THE COURT:  Oh, okay.  I just want to be able

22   to put names and faces together.

23               All right.  We're here for a confirmation

24   hearing, and included on the docket, along with that,

25   is the objection by Ms. Richardson on behalf of the

1    Pinellas County Tax Collector.  We've got the Trustee's

2    Application to employ Michael Moecker and Associates.

3    We've got a corresponding application for payment of

4    Michael Moecker and Associates.

5         We've got the application by Mr. Hyman for

6    compensation and reimbursement of fees and costs as

7    Chapter 11 Trustee.  And we've got the application

8    for compensation for John Anthony, I guess, the

9    GrayRobinson firm, the Chapter 11 Trustee's attorney.

10         Are there any other things that are supposed

11    to be on docket that I did not announce?

12         MS. THOMPSON:  No, Your Honor.

13         THE COURT:  Okay.  Are you willing to proceed

14    to confirmation?

15         MS. THOMPSON:  Yes, Your Honor.

16         THE COURT:  All right.  Have you resolved

17    Ms. Richardson's objection?

18         MS. THOMPSON:  Yes, Your Honor.

19         MS. RICHARDSON:  No.  I'm sorry.

20         THE COURT:  As I understand it, there's some

21    imprecise treatment of the Tax Collector in there with

22    respect to, what is it, Class IV  What class are you

23    in?  Class IV, other secured claims?

24         MS. RICHARDSON:  Yes, Your Honor.

25         THE COURT:  Okay.

1          MS. RICHARDSON:  And perhaps it's just a

2     matter of semantics, but Ms. Thompson indicated that

3     the Tax Collector, I presume after an objection I

4     haven't seen, is resolved, will be paid in full, I

5     guess the allowed claim.  But she was stating that the

6     Tax Collector would be treated as a priority claimant.

7     But under Florida law, *ad valorem* taxes are secured.

8     And with the potential of time to resolve objections,

9     it's more than just semantics.  Because if we are a

10    secured claimant, and treated as such, then payment in

11    full would include all interest accrued post-

12    confirmation date until resolution of the claim.  If

13    the treatment is priority, there would not be adequate

14    payment to satisfy the interest payments.

15          THE COURT:  And isn't there also an issue

16    about what interest rate if the taxes do become

17    delinquent?

18          They're not delinquent now; is that correct?

19          MS. RICHARDSON:  The 2005 taxes are

20    delinquent.

21          THE COURT:  Okay.  So they're --

22          MS. RICHARDSON:  They're accruing at 18

23    percent under Florida law, unless this Court directs

24    otherwise.  I believe the Tax Collector would be

25    entitled to 18 percent through the effective date.

1    We would request 18 percent thereafter, but the case

2    law would support a reduced amount, as long as it's a

3    fair --

4              THE COURT:  A market rate?

5              MS. RICHARDSON:  -- a fair rate.

6              THE COURT:  And then the 2006's are not yet

7    due?

8              MS. RICHARDSON:  They are not delinquent.

9    They will not be delinquent until April.  In fact,

10   they're not due and owing for 2 weeks, 13 days.

11             THE COURT:  And then once they do become due

12   and owing, it's 6 percent?

13             MS. RICHARDSON:  It's 18 percent.  Well,

14   actually, they do not accrue interest until they become

15   delinquent in April.  If they were paid in November,

16   they actually could enjoy a 4 percent reduction,

17   3 percent in December, and so forth, until the March

18   gross tax rate.

19             THE COURT:  And the total dollar amount for

20   both years is rather nominal in the grand scheme of

21   things; isn't it?

22             MS. RICHARDSON:  In the grand scheme of

23   things today.  If it were paid in October it would be

24   slightly over $4600.

25             THE COURT:  For both years?

1          MS. RICHARDSON:  Yes.

2          THE COURT:  All right.

3          MS. THOMPSON:  And, Your Honor, I am sorry if

4     I wasn't precise.  However, we did agree to pay the

5     interest.  It is our expectation that we are going to

6     make the payment on the claim, on the effective date,

7     on or about the effective date.  So, we would be paying

8     at least 2006 without penalty.

9          THE COURT:  Do you want to amend the Plan *ore*

10    *tenus* to create a subclass of Class IV?

11         MS. THOMPSON:  I don't think that's

12    necessary, Your Honor.

13         MS. RICHARDSON:  I think that may already be

14    in there.  I think it's each subclass is deemed to be a

15    separate class for purposes under the Bankruptcy Code,

16    including voting.  So if the Tax Collector were treated

17    as an other secured claimant, that may already be

18    there.

19         THE COURT:  All right.  But out of the

20    treatment, there's four or five options given.  What

21    you're saying is, that Romanette No. IV is what will be

22    provided for the Tax Collector.

23         MS. THOMPSON:  Yes, Your Honor.

24         THE COURT:  Including -- well, it says "in

25    full," so that would presumably include the interest.

1    Okay.  So the amendment is that you're specifically

2    pigeon-holing the Tax Collector under Class IV --

3    Romanette IV.  Then that makes you happy; right?

4         MS. RICHARDSON:  That would make us happy.

5    Thank you, Your Honor.

6         THE COURT:  Okay.  Make sure that the Order

7    Confirming Plan, if we confirm the Plan, includes that

8    specifically.  Okay?

9         So that resolves the objection.  The

10   objection is mooted by the *ore tenus* amendment of the

11   Plan.

12        Okay.  What can we take up next?

13        MS. THOMPSON:  Your Honor, I'd like to put on

14   the record briefly some of the salient features of the

15   Plan that was propounded by Common Paymaster, Mirabilis

16   and the Chapter 11 Trustee, Mr. Hyman.

17        THE COURT:  One thing I would like to know in

18   particular is:  Does the Plan anticipate payment of the

19   Michael Moecker administrative expense?

20        MS. THOMPSON:  Yes.

21        THE COURT:  Okay.

22        MS. THOMPSON:  And starting from the classes,

23   administrative expenses are to be paid in full in the

24   amounts allowed by the Court.  And we've included in

25   the supplemental funding calculation -- we anticipate,

1    based on our calculation and supplemental funding

2    amount that's been agreed to by Mirabilis, that they'll

3    be enough for us to take this Plan all the way through

4    the final distribution report to the Court.

5         The administrative expenses include not only

6    those expenses that are before Your Honor today for

7    consideration and supplemental applications to those

8    professionals, but also expenses for contracts that the

9    Trustee assigned postpetition with various "in the

10   ordinary course type contracts."  Those will also be

11   paid up through the effective day so that there will be

12   no professionals that will be owed money.

13        One note for the record, Your Honor.  Capital

14   Consultant was a professional that was approved at a

15   time when the parties were in a less amicable frame of

16   mind, and there was some discussion --

17        THE COURT:  They were approved?

18        MS. THOMPSON:  The application to employ

19   Capital Consultants were approved.  That was the

20   lobbyist for the South Carolina --

21        THE COURT:  Okay.  I was thinking about the

22   accounting firm or whatever.

23        MS. THOMPSON:  It was the lobbyist for the

24   South Carolina contracts, which are the remaining -- or

25   the best remaining contract that the Debtors -- the

1    reorganized Debtor will have.  And so the continued

2    services of that lobbyist are important.

3         We did not file the fee application.

4    However, it will be filed with the supplemental fees.

5    But it is the parties expectation, we've also discussed

6    this with the U.S. Trustee, that Capital Consultants

7    will be paid on the effective date and will be

8    continued to be paid timely, subject, of course, to

9    Your Honor's Order approving the fees for

10   reasonableness.  That's the administrative expense.

11        In the priority, we have very, very little

12   priority claims.  And mostly they are tax claims, and

13   they will be paid pursuant to the Plan.

14        We have in Class III secured claims.  And in

15   addition to the claim of Pinellas County, we have some

16   secured claims, to which objections have been made by

17   the proponents yesterday.

18        In Class IV, we have --

19        THE COURT:  Besides the Pinellas County Tax

20   Collector.

21        MS. THOMPSON:  I'm sorry?

22        THE COURT:  In Class IV, besides the Pinellas

23   County Tax Collector?

24        MS. THOMPSON:  We have claims of Rhonda and

25   Mike Masters.  Those claims have been objected to.  I

1      want to make sure that I get the classes right.

2             THE COURT:  Class IV is other secured claims.

3             MS. THOMPSON:  Yes.  In Class V, we have -- I

4      made so many notes, just one moment.

5             THE COURT:  Take your time.

6             MS. THOMPSON:  Class III, Your Honor, I

7      didn't address.  Class III is the claim for Mirabilis.

8      Pursuant to the settlement of the parties, that claim

9      is allowed in the amount of $1,732,727.56, of which

10     $500,000 is an unsecured that would be subordinated.

11     The secured claim will be paid pursuant to the terms in

12     the Plan.

13            Class No. V is unsecured creditors, and the

14     Plan contemplates that those creditors will be paid in

15     full.  Those that have claims of $2500 or less or elect

16     to be treated as small claim holders will be paid on

17     the distribution date.  Those other claims that are a

18     larger amount can be paid up to two years following the

19     confirmation of the Plan.

20            The Plan provides that the payment for all of

21     these claims, and also the claim of Class VI, which is

22     a settled claim of Mr. Simmons, will be paid out of new

23     capital that's provided by Mirabilis, $1 million of

24     which was put into Mr. Warren's trust account before

25     the Plan was filed.

1          THE COURT:  Is that the supplemental funding?

2          MS. THOMPSON:  No.  That's the new capital,

3    the $1 million.  The supplemental funding is a number

4    that was to be determined by the parties in number and

5    in amount that was going to be sufficient in order to

6    insure that the Plan could be consummated and final

7    decree entered without the need for further monies to

8    be provided by Mirabilis, with Larry Hyman being the

9    disbursing agent with respect to post-confirmation

10   distributions, objections, and filing of the reports

11   that would be done with those duties.

12         THE COURT:  And that's not a cap or a pot.

13   that's whatever's necessary to pay the rest out of the

14   100 percent?

15         MS. THOMPSON:  Right.  However, we have

16   yesterday, as I noted, we filed objections to claims

17   that were done through a cooperative process, in which

18   both Mirabilis, as well as the Trustee, independently

19   looked at the claims, independently looked at

20   objective, invoices or other documents with respect to

21   the claims, and came to a common agreement with respect

22   to what claims should be objected to and/or allowed in

23   what amounts.  And that is what is contemplated for the

24   remainder of the claims.

25         Included in the supplemental funding, besides

1       the supplemental applications for administrative

2       expenses are --

3               THE COURT:  Who was supposed to consider

4       those; me?  They'll be supplemental applications --

5               MS. THOMPSON:  Yes.

6               THE COURT:  -- between now and the second

7       anniversary of the Plan confirmation?

8               MS. THOMPSON:  The applications for

9       administrative expenses will be filed.

10              THE COURT:  Supplemental.

11              MS. THOMPSON:  I don't think the Plan

12      provides for the Court to have jurisdiction over

13      applications post-confirmation.  But there is a period

14      between the period of the applications presently before

15      you.

16              THE COURT:  And the ones to come?

17              MS. THOMPSON:  Yes.

18              THE COURT:  The one to come.

19              MS. THOMPSON:  Right.  So included in the

20      supplemental funding is sufficient monies to pay all

21      claims that the parties have agreed are undisputed and

22      should be paid.  And it also has a reserve sufficient

23      to pay all claims that would be in a disputed category.

24      There are a number of claims to which objection may

25      well be made, and no party has waived its rights to

1    make such objections.

2         However, the money that is included in the

3    supplement funding does provide for the payment of

4    those claims in the amount that the objections are

5    overruled.

6         And the parties, prior to this confirmation

7    which has been an extraordinary, and in the words of

8    Mr. Warren, "a herculean" effort of all parties to

9    achieve amenity and cooperation in a context in which,

10   as you know, there was a lot of contention, discord.

11   Part of that effort was trying to reach resolution of

12   various claims prior to confirmation so that the number

13   that would be included in the supplemental funding

14   would be a firm number and would not be subject to a

15   lot of the really extraordinarily high or problematic

16   claims.

17        With respect to that effort, there were a

18   number of claims that Mirabilis made payment to the

19   claim holders and acquired those claims through

20   assignment.  That assignment -- notice of assignment

21   was filed this morning with the Court.  And also there

22   was a notice of waiver of right to distribution.  And

23   so for purposes of the supplemental funding, we have

24   discounted the number that would be necessary to pay

25   those claims from the supplemental funding.  And we're

1      not taking into consideration those claims.

2            THE COURT:  Would they fall within the

3      subordinated claims class?

4            MS. THOMPSON:  Yes, Your Honor.  In the event

5      that the Plan is not confirmed, they're waiving their

6      rights to recover their money.  However, in the event

7      that the Plan is confirmed they would be treated as a

8      subordinated claim similar to the other claims of

9      Mirabilis-related entities that are subordinated under

10     the terms of the Plan.

11           THE COURT:  Okay.

12           MS. THOMPSON:  And therefore, Your Honor, the

13     supplemental funding that's going to be contributed by

14     Mirabilis, the parties have agreed will be in the

15     amount of $388,000.  Of that amount, there is some of

16     that amount currently in Mr. Warren's trust account.

17     Mirabilis is, as we speak, apparently making efforts to

18     get the remaining amount of money wired to Mr. Warren's

19     trust account.  And the parties have agreed that we

20     will not submit the Order Confirming the Plan to the

21     Court until that money is in place, making the Plan

22     feasible in all respects.

23           THE COURT:  And to the extent that the

24     objections to the claims that fall within the unsecured

25     class are overruled, that amount of money will be

1    sufficient to pay those claims as well?

2              MS. THOMPSON:  Yes.

3              THE COURT:  Okay.

4              MS. THOMPSON:  And that has been my

5    continuing refrain in negotiations with Mirabilis with

6    respect to how much money was needed.  And I do need to

7    report to the Court that they acceded to our request,

8    and this truly is a number that we've agreed on, and we

9    believe that number is sufficient under any doomsday

10   scenario that we could picture, short of us all going

11   back to war to pay all of the claims.

12             THE COURT:  And if the objections are

13   sustained, then some of that money will go back to

14   Mirabilis?

15             MS. THOMPSON:  Yes.  The Plan provides that

16   to the extent that that supplemental funding, or indeed

17   the new capital, wouldn't be required to pay the claims

18   through the entry of the final decree, that that money

19   would then be returned to the reorganized Debtor.

20             THE COURT:  And we don't need a supplement

21   funding letter of credit?

22             MS. THOMPSON:  Because the number is the

23   number that Mirabilis can work with, they elected to

24   put in cash.

25             THE COURT:  Okay.

1          MS. THOMPSON:  I think that they reserve the

2     right to substitute a letter of credit at some future

3     time, if that should be necessary.

4          THE COURT:  Okay.

5          MS. THOMPSON:  Your Honor, another feature of

6     this Plan is the settlement of two pending adversary

7     proceedings that were filed in this case.

8          THE COURT:  The one that I've been holding

9     off on entering a default judgment and the one that has

10    been perpetually in moratorium status?

11         MS. THOMPSON:  Yes, Your Honor.  And you'll

12    be very pleased to know that you'll be able to take

13    those off your continuing docket.  In Case No. 06-246,

14    which was what we referred to as the substantive

15    consolidation proceeding, the Plan, by its terms,

16    effectuates a settlement of that, and that adversary

17    proceeding will be dismissed.  There will be no

18    substantive consolidation, and all of the various

19    defendants that are related entities of the Debtor will

20    retain their legal character and there will be no

21    intertwining between those companies and the Debtor.

22         With respect to 06-328, that was an adversary

23    proceeding Mr. Hyman filed against -- as Trustee

24    against Common Paymasters and Mirabilis.  That

25    proceeding will also be dismissed with prejudice.

1          THE COURT:  And what will you do?  You will

2     give me orders -- that based on confirmation of the

3     Plan you'll give me orders that dismiss them?

4          MS. THOMPSON:  I believe that the Order

5     Confirming Plan -- yes, we will, because they're in the

6     adversary.  Absolutely, Your Honor.

7          THE COURT:  Okay.

8          MS. THOMPSON:  The Confirmation Order

9     provides for the dismissal of those actions, but we'll

10    clean it up and also --

11         THE COURT:  And where specifically am I

12    looking in the Plan for those resolutions?  Would that

13    be 2.2(a) as the --

14         MS. THOMPSON:  Yes, Your Honor.  It's at

15    Article 2, starting with 2.1, and that deals with the

16    compromises that have been reached with the Plan

17    proponents.

18         THE COURT:  2.2(a) addresses 06-246?

19         MS. THOMPSON:  Yes.

20         THE COURT:  And 2.3(a) deals with 06-328?

21         MS. THOMPSON:  Yes.  2.2 deals with the first

22    adversary, and 2.3 --

23         THE COURT:  Okay.

24         MS. THOMPSON:  -- deals with the second

25    adversary.

1            Also, 2.4 deals with any lender-related

2      claims that could have been brought that will not be

3      brought, and the Mirabilis secured claim, as part of

4      that, will be deemed allowed and as provided for in the

5      Plan.

6            Article 2.5, Your Honor, deals with the

7      settlement of claims by and between Simmons and the

8      Plan proponents and --

9            THE COURT:  Mr. Simmons takes a haircut, and

10     the estate gives up any claims against Mr. Simmons.

11           MS. THOMPSON:  Yes, Your Honor.

12           THE COURT:  Okay.

13           MS. THOMPSON:  And then, it's not part of the

14     Plan per se because it deals with claims that are

15     really claims that would arise in other contexts.  But

16     in an effort to insure that the global peace achieved

17     within the bankruptcy is -- the benefits of that are

18     derived outside of bankruptcy in the related actions

19     and between the related entities, there is a mutual

20     general release that is being executed between many of

21     the insiders, equity holders, related entities, Debtor,

22     Mirabilis and its related companies, in which there's a

23     mutual general release of all parties as against each

24     other.  It's important to note for the record that that

25     does not release claims that could be brought by the

1    U.S. Trustee.

2           However, it is integral and material and a

3    key part of the Plan because it allows the certainty of

4    treatment within the Plan and within the claims against

5    the Debtor to insure that there's not going to be some

6    collateral issues that are going to arise in other

7    contexts.

8           And as of today, that mutual general release

9    is almost finished.  It is our understanding that there

10   are a couple of people who have yet to sign but who

11   have agreed to sign.  And that mutual general release

12   should be done by the effective date and is, in fact, a

13   condition precedent.

14           THE COURT:  Okay.  To the effective date?

15           MS. THOMPSON:  Yes.

16           THE COURT:  To the effectiveness.

17           MS. THOMPSON:  To the effectiveness of the

18   Plan.

19           Your Honor, we believe this Plan, as proposed

20   -- it has gotten all of the votes.  We filed the

21   ballots.  Every class that's impaired has voted.  The

22   only class that did not was the class of Mr. Simmons,

23   and it's our understanding that that ballot of

24   accepting a Plan is here in the courtroom today.  So we

25   have the vote.

1          The Plan, as proposed, complies with all the

2     requirements of 1129.  We've demonstrated that it's

3     feasible.  It's in the best interest of the creditors.

4     And, therefore, we submit, Your Honor, that the Plan

5     should be confirmed.

6          THE COURT:  All right.  Anybody want to be

7     heard?  Ms. Barnett?

8          MS. BARNETT:  We have no objections to the

9     confirmation, Your Honor.

10          THE COURT:  All right.  Anyone else want to

11     be heard?

12          MR. LASH:  Your Honor, just briefly.  Tom

13     Lash on behalf of Mirabilis.  I believe that, as was

14     stated by Ms. Thompson, with regard to the supplemental

15     funding, to be clear, I think that what's left open is

16     the option of substituting later a letter of credit,

17     should Mirabilis decide to -- the number is $260,000

18     and we'll still be awaiting confirmation for the wire.

19     And we've agreed that no confirmation order will be

20     submitted until such time as Ms. Thompson and the

21     Trustee have verification of that $260,000 wire, which

22     will be wired into Mr. Warren's trust account.

23          THE COURT:  Okay.

24          MR. LASH:  And additionally, I would just

25     like to express the work of everybody, of the Trustee,

1    the Trustee's counsel, and Mr. Warren.  It's made

2    possible this amicable resolution of this, and it has

3    allowed -- last April, the first time I was before the

4    Court and we stated what Mirabilis wished to do with

5    this, and to have everybody paid and paid in full and

6    with interest, to be occurring here today.  Thank you.

7         THE COURT:  It's certainly remarkable.  When

8    Mr. Warren came in and observed on behalf of TenShi, I

9    guess he was telling me that TenShi is some sort of a

10   foreign word that means love fest, and he was going to

11   bring that to the table or something.  Because you

12   certainly did.

13        Mr. Simmons and Mr. Ruiz.  Mr. Simmons is

14   prepared to vote in favor of the Plan?

15        MR. RUIZ:  He has, Your Honor, and we have a

16   signed ballot accepting the Plan to be filed with the

17   Court.

18        THE COURT:  Okay.  If you have it, we'll go

19   ahead and take it and we'll scan it in.  And then you

20   don't have to hold onto it for four years.  We only

21   have to hold onto it for 60 days.

22        (Document tendered to the Court.)

23        THE COURT:  All right.  I've reviewed the

24   confirmation affidavit which tracks essentially what

25   Ms. Thompson was reading into the record, and she has

1    given us more detail about the salient features of the

2    Plan.

3         The Plan is a joint effort among the various

4    constituencies that had an interest in seeing that this

5    Debtor survives.  The Plan meets all of the criteria

6    that the Code sets forth in 11 U.S.C. §1129(a) and (b),

7    to the extent that there was a class of claims that did

8    not vote.  But they weren't going to vote anyway.  That

9    would be subordinated claims.

10        There has been an amendment on the record

11   that takes care of Ms. Richardson's objection.

12   Mr. Simmons has voted.  It looks like there's a 100

13   percent vote, with the exception of Class VII.  And the

14   Court confirms this Plan.  I won't enter an Order until

15   it's submitted to me so that we make sure that the

16   supplemental funding component is in place in the way

17   that Mirabilis wants it.

18        With respect to the two adversary

19   proceedings, the Plan states that the Trustee will

20   dismiss these actions.  I don't know procedurally

21   whether the Trustee can do that on his own or whether a

22   stipulation needs to be filed, given whatever papers or

23   pleadings were filed.  But if it can be done on a

24   voluntary dismissal, that's fine; otherwise, do it by

25   stipulation.  Or we can just change the provisions of

1       the Plan and we can say that the Court will dismiss

2       them upon entry of the confirmation order, if that

3       makes it easier for everybody and cuts down on

4       attorney's fees.

5               Is that fine?

6               MS. THOMPSON:  That's fine.

7               THE COURT:  All right.  You can recite that

8       amendment too, that in terms of dismissing the two

9       adversary proceedings, the Court will enter an Order

10      dismissing those upon the effective date.  But you'll

11      provide me the Orders.  Okay?

12              MS. THOMPSON:  Yes, Your Honor.

13              THE COURT:  Now with respect to the

14      applications for compensation, we've got three.  We've

15      got the Chapter 11 Trustee, we've the GrayRobinson

16      firm, and we've got Michael Moecker & Associates.

17              Are there any objections to my granting those

18      -- or approving those applications?

19              MS. BARNETT:  No, Your Honor.

20              THE COURT:  None?  Okay.  Mirabilis?

21              MR. LASH:  Again, Your Honor, we're

22      100 percent for all.  Thank you.

23              THE COURT:  Okay.  I will look at those and

24      get an order entered.  I probably won't look at them

25      very carefully because if everyone is agreeable to the

1    amounts that are sought, I will probably just approve

2    them in the amounts that they are sought.

3              I will say for the record, I was disappointed

4    to learn about the Michael Moecker application at this

5    late date.  If a Chapter 11 Trustee or Debtor-in-

6    Possession needs professional help, then that should be

7    flagged early on in the case and not brought to the

8    table at confirmation.  If this wasn't such a

9    consensual group of folks and people weren't having the

10   love fest, I could imagine that we would get very

11   strenuous objections by various people to the

12   application to employ and, perhaps, if a showing could

13   be made as to why the services were necessary, any

14   application for payment.

15             But given the record as it is, I will look at

16   those applications for employment and payment of

17   Michael Moecker favorably.  But it shouldn't happen

18   again that way.

19             MS. THOMPSON:  Yes, Your Honor.

20             THE COURT:  Because it won't be as easily

21   resolved in a different kind of case if it is teed up

22   that way.  So, congratulations, all of you, and I'll

23   wait to receive your orders.

24             MS. THOMPSON:  And, Your Honor, if we could

25   take up one other matter.  It isn't on the record.

1    However, you had previously granted, on September 21st

2    an order to obtain postpetition financing, in which you

3    granted Mr. Hyman the ability to borrow up to $200,000

4    to pay payroll.

5          Mr. Hyman is in need of an amount for the

6    upcoming payroll for this Wednesday that will exceed

7    that grant of authority by $6,000.  Mirabilis has

8    agreed to make that money available.  But if we could

9    have an *ore tenus* motion to modify that order to permit

10    and to provide authority of Mr. Hyman to borrow up to

11    $206,000.

12          THE COURT:  Anybody have an objection to

13    that?

14          MR. LASH:  And, Your Honor, on behalf of

15    Mirabilis, once again, when we came in last April the

16    whole pledge of Mirabilis was a 100 percent plan to

17    support the Debtor.  And this $6,000, which is in

18    addition to the $200,000 postpetition financing,

19    appears to be necessary to complete that pledge.  And I

20    think with that, and what we have in the Plan,

21    Mirabilis, and even the much maligned Mr. Amodeo, have

22    honored their pledges that were made at this point.  So

23    definitely in favor of it.

24          THE COURT:  Okay.  Where do we plug that in,

25    in Class III?  Do we add that to your secured portion

1    or the unsecured portion?

2              MR. LASH:  Actually, Your Honor, the way the

3    Plan works, that claim gets waived upon a successful

4    confirmation, once the confirmation goes hard and we

5    get to the effective date.  We don't have a

6    distribution for that.  We knew it was necessary, and

7    just like monies that are going to be necessary moving

8    forward for this entity in order for it to prosper,

9    which Mirabilis believes that it can manage it so that

10   it will prosper, those amounts we won't have a claim

11   for.

12             THE COURT:  Okay.  It's hard to quibble with

13   a gift.  Sure, I'll amend the Order.  I grant the *ore*

14   *tenus* motion to increase that borrowing authority by

15   $6,000, and won't require it to be paid back.

16             MS. THOMPSON:  And, Your Honor --

17             MR. LASH:  Once we have an effective

18   confirmation, Your Honor.

19             THE COURT:  Right.

20             MR. LASH:  Thank you.

21             THE COURT:  Right.

22             MS. THOMPSON:  And, Your Honor, again, we

23   thank the Court for all of its efforts in this case,

24   which surely facilitated the resolution.  All of

25   counsel in this courtroom has all labored independently

1    and collectively to get where we are today, and

2    everyone deserves some recognition for that.

3         THE COURT:  I think it's a great result.  I

4    think all of the lawyers did a wonderful job

5    representing their respective clients.  It's too bad

6    Mr. Slaughter isn't here.  I don't know to what extent

7    Mr. Amodeo is behind all this, but to the extent that

8    he's behind any significant portion of it, it seems to

9    me some apologies are owed to that gentleman.  He's not

10   here to hear the kudos.  But if he is entitled to

11   kudos, I hope someone will bear that message to him.

12        MR. LASH:  And he has been active, Your

13   Honor.  Thank you.

14        THE COURT:  All right.  And I'm not saying

15   that I am the one that owes him an apology, by the way.

16        MR. LASH:  No, Your Honor.  Not at all.

17        THE COURT:  Okay.  This hearing is concluded.

18   Thank you all.

19        MR. THOMPSON:  Thank you.

20        THE COURT:  For those that want their

21   applications approved, please give me some orders with

22   blanks in them.  Thank you.

23        (Whereupon, the hearing was concluded at

24   10:44 a.m.)

25

## CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

      I, GRETCHEN L. SCHULTZ, Certified Reporter and Notary Public, hereby certify that the foregoing proceedings were reported and transcribed by me.

      I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel involved in the matter, nor financially interested in the outcome.

      BE IT KNOWN that I shall not attest to the accuracy or content of any transcripts other than the original transcription and official copies produced by me and bearing my original signature in blue ink and official court reporter and notary seals.

      SIGNED AND SEALED this 17th day of October, 2006, in the City of Tampa, Hillsborough County, Florida.

_____
                 Gretchen L. Schultz
                 Certified Reporter
     Notary Commission No. DD496376
     Commission Expiration: 12/20/09